No. 12,819.

ZANG *v.* WRIGHT.
(23 P. [2d] 580)

Decided June 26, 1933.

Mr. WILLIAM E. HUTTON, Mr. BRUCE B. McCAY, for plaintiff in error.

Mr. LOWELL D. HUNT, Mr. JEAN S. BREITENSTEIN, for defendant in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

The plaintiff, William Scott Wright, a minor, eight years of age, son of Scott R. Wright and Alice M. Wright, was a guest in his father's automobile as the same was being driven by the father in an easterly direction along East Sixth avenue in the city of Denver, which is a public highwway 42 feet in width. At the same time the defendant Mrs. Zang was driving her automobile in a westerly direction along the north side of East Sixth avenue on which are two street car tracks. Columbine street, 36 feet wide, runs north and south and crosses the avenue at a right angle. At the intersection of these two highways there was a collision between the two automobiles which resulted in physical injuries to the plaintiff. This action by him, conducted by his mother as next friend of his own selection, has for its object a money judgment to compensate him for the injuries which he sustained as the result of the alleged negligence of the defendant. Trial to a jury resulted in a verdict for the plaintiff in the sum of $1,500, on which the trial court entered judgment.

In its instructions to the jury, given at plaintiff's request, or with his approval, the trial court thus states his grievance: When the Wright car was proceeding easterly on the south side of East Sixth avenue and along the south track of the street car line thereon, and when it reached the intersection of that street with Columbine street, the father made a left-hand turn to go north on the latter street, and in making this turn his car also cut the corner; that is, passed to the left of the center of the intersection of the two streets, and, as he says, was running at the rate of 12 or 15 miles an hour, while the Zang car, coming from the east on the north side of the avenue, was running at the rate of 15 or 18 miles an hour. While plaintiff's father was making this turn the defendant, as it is said, carelessly, negligently and recklessly drove her

car into and upon the Wright car in which the plaintiff was riding, as the result of which the plaintiff sustained the injuries complained of. The negligence of the defendant is thus specified: That she drove her automobile at an excessive rate of speed in violation of the ordinances of the City and County of Denver, with inadequate lights, likewise in violation of such ordinances, and failed to bring her car to a stop before striking the car in which plaintiff was riding, and that she failed to turn her car to one side of the point occupied by the Wright car so as to avoid striking the same, and operated her car without adequate brakes or other device for checking the speed in violation of the Denver ordinances.

Without reproducing the specific allegations of defendant's answer, it is sufficient to say that it put in issue all of the affirmative allegations of the complaint in which negligence of the defendant is set forth, and averred due care on her part. That the father of the plaintiff, who was driving the car at the time of the collision, was negligent in making the left-hand turn from Sixth avenue into Columbine street and in cutting the corner and in continuing to drive north on the west side of Columbine street was guilty of negligence, as matter of law, is too clear for argument, for the same was in direct violation of the Denver ordinance applicable to such conduct, and plaintiff does not even claim to the contrary.

Plaintiff's counsel in their briefs, however, contend that the negligence of the father may not be imputed to the plaintiff because the latter was riding as a guest in the father's car. The trial court in one of its instructions rightly so instructed the jury. The plaintiff, however, in his briefs argues at length, possibly for the purpose of neutralizing his father's negligence, that the defendant, by reason of her own negligence in driving her car, may not in any event be heard to complain of the father's negligence. If that were the only question in the case possibly that would be so, but if defendant

herself was not guilty of negligence in the driving of her car, this judgment against her should be reversed, whether or not the father was negligent.

No objection seems to have been made by the plaintiff to the introduction of evidence which tended to show that the defendant at the time of the collision was lawfully driving her car. The important and controlling question in the case is not whether the father was guilty of negligence in driving his car, but whether the defendant was negligent in driving her car. We have examined the evidence and are fully justified in the statement that the defendant was not driving her car at an excessive rate of speed, or in violation of any Denver ordinance, or was in any other respect negligent. There is no evidence whatever that the brakes on the defendant's car were inadequate. The only evidence upon that subject is directly to the contrary, that they were in perfect working condition. There is no evidence that the defendant was negligent in failing to turn her car in such a way as to avoid collision with the Wright car. To the contrary, she did all that any careful driver could do to avoid collision. Indeed, the only attempt to establish any specific act of negligence of the defendant at the time of the collision was that the car did not have its headlights burning, which prevented her from seeing the car driven by plaintiff's father, and prevented the father from seeing her car, as he suddenly swung from Sixth avenue into Columbine street. The plaintiff's father testifies that at the time he made the turn into Columbine street the headlights of his own car were burning and the light cast thereby extended far beyond the east line of Columbine street and along East Sixth avenue on which the defendant was driving. There was also a street light at the intersection of these streets. Plaintiff's only evidence upon this particular issue was the testimony of the plaintiff's father who testified that, in making this turn, he did not see the defendant's car at all until after the collision occurred. If the father did not see the

defendant's car, and he says he did not, as he was making this turn, he certainly could not determine whether or not its headlights were then burning. The defendant testifies positively not only that her brakes were in perfect condition, but also that both the headlights and side or cowl lights of her car were burning as she drove down the avenue and were still burning at the time of the collision. In this she is corroborated by two of her daughters who were riding with her in the car at the time. We do not think there was any sufficient legal or competent evidence in the case even tending to show that the defendant's car was without headlights or side lights. She herself testifies, and in this is not contradicted, but is corroborated by other testimony, that her car was already within the street intersection before the Wright car suddenly started to turn from East Sixth avenue into Columbine street. The father may have testified truly that he did not see the defendant's car until after the collision. But if he did not, it was because he was not looking towards the east, but probably was looking north to see if any car from that direction was proceeding south along the west side of Columbine street so as to avoid a collision therewith by his own car which was still unlawfuly running, at the time of the collision, in a northerly direction on the west side of Columbine street in violation of the express provisions of the Denver city ordinance upon that subject.

The court in one of its instructions to the jury committed error harmful to defendant. A Denver city ordinance provides that, at the hour of the day or evening (when these cars were being driven), all automobiles operated on Denver streets must display two white side or headlights located on opposite sides of the car visible 300 feet ahead, and the court after so instructing the jury told them if they believed from a preponderance of the evidence that the accident complained of was at such a period of time, and there is no question about the time of the evening, and there was insufficient light at

the time and place of the accident to clearly reveal persons or objects 300 feet distant, and that the automobile of the defendant in approaching such intersection was not equipped with such headlights located on opposite sides of the car and then burning and visible 300 feet ahead, producing sufficient light to reveal objects 100 feet ahead, and that the automobile of the plaintiff's father was so equipped with headlights so burning, then and in that event plaintiff's father's car had the right of way at the street intersection over the car driven by the defendant, and the defendant was guilty of negligence in so operating her said automobile. That this instruction was erroneous and highly prejudicial to the defendant is apparent. The pertinent Denver city ordinance requires that either side lights or headlights shall be burning, but, in effect, this instruction tells the jury that an automobile must have headlights burning and if it does not have them burning, even though its side lights are burning and of the intensity required, the defendant was guilty of negligence. There is no evidence whatever in this record that the defendant's car at the time of the collision was not equipped with side lights of the required intensity which were burning as the Denver ordinance requires. That the side lights were burning was not controverted and they alone would reveal objects on the avenue far beyond the east line of Columbine street. It must be remembered that the defendant's car was within the street intersection according to the testimony of the defendant, and it is not contradicted, at the time the plaintiff's father began his turn to the left on Columbine street.

We find no evidence in this record that tends to show negligence of the defendant of such a character as to require its submission to the jury to make a finding upon the same. The testimony by plaintiff's father that the defendant's car at the time of the collision was not equipped with headlights is but a mere conclusion and it is so at variance with the admitted facts as to be in-

congruous and should receive no consideration. That testimony was inconsistent with the admitted physical facts in the case and should not have been admitted over the defendant's objection because plaintiff's father says that he did not see the car of defendant, as already stated, until after the collision occurred. This court has had occasion heretofore to speak upon this subject. In *Killian v. McCourt,* 69 Colo. 455, 194 Pac. 936, it is said that the conclusion of a witness—such as the conclusion of plaintiff's father as to the absence from defendant's car of headlights—which is so at variance with the admitted facts as to be incongruous, should receive no consideration. We think this observation is pertinent here because the testimony of plaintiff's father, which was supposed to establish the fact that the defendant's car was not equipped with headlights, is so clearly contrary to the admitted physical facts that it should receive no consideration either at the hands of the jury or the court.

In *Westerkamp v. C., B. & Q. Ry. Co.,* 41 Colo. 290, 92 Pac. 687, the plaintiff sued the railway company for damages for injuries sustained due to a train of defendant in error colliding at a railroad crossing with a wagon which the plaintiff was driving. The trial court at the conclusion of the testimony directed a verdict for the defendant upon the ground that it established that the contributory negligence of plaintiff was the proximate cause of his injury. Speaking to the point that is involved in the present action, the court used the following language: "Where a physical situation renders the right of a matter clearly beyond all reasonable controversy, there is no conflict to be solved by a jury, because no just verdict can be rendered contrary to all reasonable probabilities. In such circumstances the testimony of a witness to that which is physically impossible must be rejected, and a court will treat as unsaid by a witness that which, in the very nature of things, could not be as said. A trial court should not submit to a jury the determination of a fact about which, from all the testimony, there

can be no dispute. Plaintiff not having looked for the approach of the train which struck his wagon, failed to exercise that degree of care which he should, and it is beyond dispute that such failure was the proximate cause of his injury. The trial judge was, therefore, right in directing a verdict for the defendant.''

This case cites a number of authorities from many jurisdictions in support of this conclusion. The doctrine of this case as applied here is that the uncontradicted physical facts in the case at bar disclose that the conclusion of the plaintiff's father is so at variance with the admitted physical facts as to be incongruous, as said in the Killian case, supra, that it should receive no consideration. That the plaintiff's father's testimony that the defendant's car was not equipped with headlights at the time is so inconsistent with the admitted physical facts as to deprive it of any probative effect whatever. When the father testified that he did not see defendant's car at all until after the collision, his statement that it did not have the headlights burning when the collision occurred, is merely a conclusion of the witness which was inconsistent with a well established fact.

The judgment in the case is, therefore, reversed and the cause is remanded. If further proceedings are had below they must be not inconsistent with the views expressed in this opinion.