No. 12,916.

Andrus *v*. Hall.

(27 P. [2d] 495)

Decided November 13, 1933.

Mr. EDGAR McCOMB, Mr. MILTON D. GREEN, for plaintiff in error.

Messrs. RINN & CONNELL, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as Andrus, his son Richard Andrus as Richard, defendant in error as Mrs. Hall and her deceased husband Gyeer A. Hall as Hall.

Mrs. Hall sued Andrus for $5,000 damages for the death of Hall which resulted from an automobile collision on October 31, 1930, between the cars driven by the latter and Richard. On a verdict for Mrs. Hall for $3,500 judgment was entered. To review that judgment Andrus prosecutes this writ.

The 30 assignments of error are argued under the three following propositions: (1) Recovery is barred by Hall's negligence; (2) reversible error was committed in the admission and rejection of evidence; (3) reversible error was committed in the giving and refusing of instructions.

Richard, a youth of 17, using his father's car with the

latter's permission, and accompanied by the daughter of a neighbor, was driving west on the Valmont road toward Boulder. Hall, in his own car, was driving north on the Pleasant View road toward Longmont. At the intersection of these roads the cars collided and Hall was hurled from his machine and fatally injured. He never regained consciousness and died the second day following at the age of 62.

1. The only living witnesses of the catastrophe were Richard and his companion, and plaintiff was obliged to make her case from this palpably unfriendly testimony. From it the jury was fully justified in believing: That less than one mile from this intersection Richard was traveling at 60 miles an hour; that he did not slow down until 400 feet therefrom; that he entered the intersection at approximately 40 miles an hour; that as he approached it he looked to the right but not to the left; that when he first saw Hall the latter was within the intersection, practically in front of him, and not over 20 feet away; that Richard did not try to escape the collision by turning to the left, but by the application of his brakes; that he struck the Hall car at the right rear wheel with such force as to practically crush the entire front of his own vehicle; that as both drivers approached the intersection the view of each in the direction of the other was intermittently obstructed by trees and other objects; that 300 yards from the intersection Hall was traveling at the rate of 25 miles an hour; that since his approach thereto was up-grade and there was no evidence that he was traveling at a greater rate of speed when he entered the intersection, or that he otherwise violated any statute or rule of the road, that he was not negligent; that the collision occurred north of the medial line of the Valmont road; that this intersection was considered dangerous; that south of the intersection the traffic is light, but east, west and north thereof it is heavy; that the incline on the north is short and steep and the vision limited; and that all of these facts were known

to Richard who frequently traveled that road. It will be noted that if Richard was traveling at 60 miles an hour when he was 400 feet from the intersection he was, at that rate, approximately but four and one-half seconds away from it; and that if he was traveling at approximately 40 miles per hour when he saw Hall 20 feet from the point of collision he had approximately but one-third of a second to apply his brakes or alter his course before the impact. The following statutes were in effect at the time of the accident:

"Vehicles * * * shall be under control at all times, viz.: must be able to stop * * * in all cases when crossing intersecting highways." C. L. 1921, p. 498, §1270 (b).

"The operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right unless such vehicle approaching from the right is further from the point of the intersection of their paths than such first named vehicle." Id. (g).

"No vehicle shall be propelled along or upon any public highway at a speed exceeding thirty-five miles per hour." S. L. 1925, p. 294, c. 110, §1.

 From the foregoing we think that the gross negligence of Richard and the absence of negligence of Hall are indisputable, irrespective of the exception contained in paragraph (g) of section 1270, C. L. 1921, supra, which we hereinafter note. If Hall looked toward the road traveled by Richard, as we presume he did, and if he saw the latter approaching, as we also presume, his vision, because of the obstacles above noted, was necessarily fleeting and intermittent, and any reasonable estimate of Richard's speed impossible. At any such time, while Hall still had an opportunity to yield the right of way, Richard must have been approximately twice as far from the intersection as he, and no reason appeared why the crossing was not safe. Richard was violating the law, both as to speed and failure to have his car under control at a crossing, and that crossing one which he well knew to be dangerous. A driver cannot

be required to yield the right of way when his inability to know and act is chargeable to the lawless conduct of him who claims it. *Boyd v. Close,* 82 Colo. 150, 257 Pac. 1079.

2. The trial began Monday, May 11, and was concluded May 13. On Tuesday, May 12, Andrus was called as a witness in his own behalf and the first question propounded on cross-examination was, "When did you first meet your attorney in this case?" This was objected to, the objection overruled and an exception saved. The answer was, "Last Sunday afternoon." It is said that counsel for Mrs. Hall had asked the jurors on their voir dire, if any of them were officers, agents or employees of a certain insurance company (said portion of the proceedings is not abstracted and no question is here raised with relation to it), and that the above quoted question was asked for the purpose of suggesting to the jurors that an insurance company was the real party in interest and had employed counsel, because Andrus had not even seen them until the afternoon of the day preceding the beginning of the trial. But nothing of the kind is disclosed by either question or answer. It was immediately followed by an inquiry concerning a certain alleged statement of Andrus to his attorneys, or to another interested in the case. Whether Andrus had made such a statement we do not know. He merely denied recollection thereof, but it later developed that such a statement had been made by Richard, and was then in the hands of his father's counsel, which statement conflicted, in a material particular, with Richard's testimony. The inquiry was therefore proper. When Mrs. Hall's attorneys later brought out from Richard that he had signed such a statement opposing counsel was asked to produce it and one of them, first intimating that it was in possession of the former, said, "If we have it we will produce it. I was not aware we had it." Richard's cross-examination then proceeded as follows: "Q. Who did you give it to? A. I gave it to an insurance man.

Q. Who was that? A. I don't recall his name. (Objection—overruled.) Q. Is he in the court room? A. No, sir. Q. Do you know his name? A. I don't recall it. Q. Do you know where he resides, or his address? A. No, I don't. I think he resides in Denver." Then followed but four questions, one objection and two answers, whereupon counsel for Andrus produced the statement. It thus appears that the only direct mention of an insurance company came from a witness for Andrus, that it came without objection, and that the whole inquiry could have been readily obviated by his counsel.

██ As above noted Richard was of necessity called as a witness for Mrs. Hall. That he would be a favorable witness was not to be expected. That he was the contrary soon developed, whereupon counsel for Mrs. Hall asked, and was granted, permission to examine him as a hostile witness. Thereupon material discrepancies developed between his present evidence and that previously given by him at the coroner's inquest, which latter had evidently been relied upon. The further examination was not drastic and was well within the rule applicable. *Polochio v. People,* 76 Colo. 574, 223 Pac. 833; *Weiss v. People,* 87 Colo. 44, 285 Pac. 162.

██ 3. Some months prior to the collision Hall had sustained a slight paralytic stroke while motoring in Wyoming; so slight that the same day he drove his car back to Boulder, Colorado, and continued to drive it and do his other work and attend to his other duties up to the time of the accident. Much evidence on this subject was introduced, including that of Andrus that at one time, in the summer of 1930, Hall was so afflicted that he could not write his name. Rebutting this, exhibits were introduced dated June 22, August 18, and October 10, 1930, all bearing Hall's admitted signature, in a firm, strong and unvarying hand. Andrus' requested instructions 3 and 4 presented this matter to the jury. They contain such expressions as "paralysis affected his

right side," "physically handicapped," "negligence which proximately caused or directly contributed to cause the accident," etc. This is unsupported by the evidence and the tendered instructions are argumentative. All the facts were before the jury. The usual and correct instructions on negligence and contributory negligence were given and, under the facts, we think they were sufficient.

The court, by instruction No. 2, gave the jury as the law the above quoted portions of said section 1270, C. L. 1921, and section 1, chapter 110, S. L. 1925. Counsel for Andrus requested an instruction that the portion of said section 1270 reading, "unless such vehicle approaching from the right is further from the point of the intersection of their paths than such first named vehicle," "is superfluous and invalid and that if any meaning were given to said last clause it would lead to rather than prevent accidents, and the court therefore instructs you to entirely disregard said last clause." The refusal to so instruct and the giving of instruction No. 2 are assigned as error, and in support of this assignment counsel rely upon *Hicks v. Cramer*, 87 Colo. 414, 288 Pac. 887. This statute has been repealed and for that reason, as well as because of the usual rule, we would not pass upon its validity unless such ruling were essential to a decision of this case. For the reasons given under paragraph 1, supra, it is not essential. Regardless of the statute, Mrs. Hall was entitled to a verdict under this evidence.

The judgment is affirmed.