No. 14,755.

FABLING ET AL. *v.* JONES.
(114 P. [2d] 1100)

Decided May 26, 1941. Rehearing denied June 30, 1941.

Messrs. WOLVINGTON & WORMWOOD, for plaintiffs in error.

Mr. FRED M. MAZZULLA, Mr. A. X. ERICKSON, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS is an action for damages for personal injuries arising out of an automobile-pedestrian accident. The parties are here in reverse order of their appearance in the district court and herein we shall refer to the minor defendant in error, as plaintiff and to the plaintiffs in error by name or as defendant or defendants. At the conclusion of the introduction of evidence both parties respectively moved for a directed verdict, as a consequence of which the court took the case from the jury, denied defendants' motion, granted that of plaintiff and in accordance with its findings entered judgment for plaintiff in the sum of $1,868.48 and costs. Defendants, who prosecute this proceeding to review the judgment,

contend that the court erred in overruling their motion to require plaintiff to separately state her causes of action; in admitting certain evidence; and they contend that there was no substantial evidence to support the findings and judgment, particularly concerning: (1) The liability of Harry Fabling, the father of Charles Fabling, under the family car doctrine; (2) the negligence of defendants, and (3) the absolution of plaintiff from contributory negligence.

Since from a careful study of the record we are convinced that the findings of the trial court on points (2) and (3)—decisive of defendants' legal liability—were so manifestly against the weight of the evidence as to require a reversal of the judgment, we deem it unnecessary to discuss other errors assigned.

■ In Denver, in the early evening of December 28, 1938, the plaintiff, then aged sixteen years, with a girl companion, boarded a westbound streetcar on East Colfax avenue at Poplar street. The girls' destination required their transferring from the streetcar to a tramway bus at the station located on the south side of Colfax avenue between the extended line of Clermont street, which does not cross Colfax at this point, on the east and Birch street on the west. As the streetcar in which they were riding approached the station, plaintiff saw the bus they wished to take waiting in front of the station and rang the bell signalling the motorman to stop. When the streetcar came to a standstill the two girls hurriedly alighted and ran around the rear end of the streetcar to cross to the bus station on the south side of the street. While in the general vicinity of the eastbound streetcar tracks — from center to center about fifteen feet south of the westbound tracks — plaintiff was struck by an automobile which was being driven by defendant Charles Fabling, and which was proceeding easterly on Colfax avenue; that is, in a direction opposite to the course of the streetcar from which plaintiff had just alighted. As is apparent, the fixing of the

locus on Colfax avenue occupied by plaintiff at the time of the accident, is of paramount importance in determining the legal rights and responsibilities of the parties at the time. If, under section 15(a) of the Denver Traffic Code, plaintiff "was within any marked crosswalk or within any unmarked crosswalk at the end of a block," it was the duty of young Fabling to yield the right-of-way to her. On the other hand, under section 15(c) of the Denver Traffic Code, on a street of the classification of Colfax avenue in the area under consideration, it is made "unlawful for a pedestrian to cross a roadway at any point other than within a marked or unmarked crosswalk" and "a pedestrian crossing such roadway at any point other than within a marked or unmarked crosswalk shall yield the right-of-way to vehicles upon the roadway."

While plaintiff, the only witness on her side of the case who testified concerning the actual occurrence of the accident, stated categorically that at the time in question she was crossing Colfax where there would have been a crosswalk if the west sidewalk of Clermont street were extended, and the court specifically so found, the physical facts, the evidence of other eye-witnesses, as well as certain statements of plaintiff herself, as we apprehend, clearly disclose beyond all reasonable controversy that she was mistaken in so fixing her position and that, in fact, during this period she was never within the crosswalk area. which, concededly, was unmarked. Plaintiff testified that she alighted from the streetcar "at Birch street." At this intersection streetcars make "near-side" stops; that is, a westbound car would stop immediately east of the eastern line of Birch street extended, at which location a "Cars-stop-here" sign is maintained by the tramway company. According to all the witnesses—except plaintiff—who testified on this subject, the car in question stopped approximately at that point. In this position, assuming the length of the car to be from sixty-five to seventy feet, as one witness

testified, the westerly line of the Clermont street cross-walk, as it appears upon a plat which it is agreed accurately portrays the locale, would be in excess of sixty feet east of the rear end of the streetcar. The plaintiff estimated this distance as being twenty feet. Notwithstanding that to have reached the Clermont crosswalk, plaintiff thus would have had to proceed in an *easterly direction* for a minimum distance of at least twenty feet, as she estimated, the other eye-witnesses, namely, the manager of a filling station at Colfax avenue and Clermont street, who observed the accident at a distance of from fifty to sixty feet, the driver of an automobile who stopped a few feet behind the streetcar to permit plaintiff to alight therefrom, and his wife who was riding with him, testified that the plaintiff and her companion ran around the rear of the streetcar and, instead of going easterly toward Clermont, cut directly across the street toward the bus station, which was located almost due south of the rear end of the streetcar. That in reality such was plaintiff's route seems clear from the following excerpt from her cross-examination:

"Q And you got around the back of the streetcar and over to the south rail of the inbound [westbound] track when the streetcar started up?

A Yes.

Q Is that when you looked to your right?

A Yes.

Q How far down Colfax could you see?

A Oh, about Ash or Albion.

Q You saw no lights of any cars at that time?

A No.

Q Then you were still hurrying?

A Yes.

Q You got over to the south track of the outbound [eastbound] streetcar tracks when you saw the lights?

A Yes.

Q How close were those lights to you then?

A Up on top of me.

Q And next to the curb?
A Yes.
Q So you had taken, perhaps, two or three steps when the accident occurred?
A. Yes."

The course thus mapped is physically inconsistent with plaintiff's being "at the corner of Clermont street" when she started across Colfax, as she testified on her direct examination. The filling station manager fixed the point at which plaintiff was struck as being approximately seventy feet *west* of the Clermont street crosswalk. The witness who stopped his automobile behind the streetcar, who also picked up plaintiff after the accident and took her to the hospital, where she was kept for some two hours for emergency treatment, testified, as did his wife, that the accident occurred over fifty feet *west* of Clermont. The defendant and the occupants of his car said its impact with plaintiff took place more than eighty feet *west* of such crosswalk. Further, it is undisputed that immediately after the accident young Fabling pulled his car over to the south curb of Colfax where he left it until after the police arrived. In this location the car was still more than twenty feet *west* of the west line of Clermont street. In other words, even then the car had not yet reached the point where plaintiff inferred it had struck her.

Two police officers assigned to the accident prevention department, reached the scene within a short time after the accident occurred. One of these officers interviewed the plaintiff. According to his testimony, plaintiff then said to him: "They [the girls] were going west on Colfax; that they rang the bell to get off at Clermont. The car stopped at Birch; running over to the bus station. I don't remember whether to catch a bus or a streetcar. She said she was in a hurry; ran around back of the streetcar, one girl following her; she said she kept on running and ran in front of this car." Besides young Fabling and the occupants of his car, two other wit-

nesses testified that soon after the accident, when the boys came over to the automobile in which plaintiff had been placed, she said to them in substance: "It was not your fault; you couldn't help hitting me."

We are thus definitely satisfied from the evidence that plaintiff was violating section 15(c), of the ordinance, supra, in crossing Colfax on the course attempted and that under these circumstances, at the point of collision, defendant had the superior right-of-way.

We do not believe the evidence shows any failure on the part of defendant driver to exercise reasonable care toward plaintiff, as was his duty under the law and ordinance, section 15(c) supra, even though at the time plaintiff was at a place where she had no right to be. It is undisputed that defendant's automobile was not traveling faster than twenty miles per hour. The speed limit in the area involved, as fixed by Ordinance 57 (d), Denver Traffic Code, was twenty-five miles per hour. Notwithstanding that the trial court so seemed to think, the mere approach of a streetcar, which under plaintiff's evidence must have been in motion before the accident occurred, logically cannot be considered as creating a situation imposing a duty on the operator of a vehicle on the other side of the street and headed in the opposite direction, to slacken his speed below the legal limit in that zone. As a witness plaintiff intimated, and her counsel argue, that the circumstance that a bus station was maintained in the area, introduced a special hazard requiring more than ordinary care on the part of motorists passing through this block. We find no tangible evidence in the record supporting this theory. On the contrary, it is undisputed that immediately before the time of the accident other vehicles were passing along Colfax at this point in a normal manner. Under the physical circumstances disclosed by the evidence young Fabling had no opportunity to observe plaintiff previously to her precipitate and not to be anticipated emergence from behind the streetcar in such close prox-

imity to his automobile as to make a collision unavoidable. Even in the split second available, defendant managed to swerve his car sufficiently to avoid striking plaintiff directly, and he stopped his auto within the car's length. There was no competent evidence of any defects in either the lights or brakes on defendant's car. See, *Zang v. Wright,* 93 Colo. 80, 23 P. (2d) 580. Further, even if some degree of negligence could be attributed to the defendant driver, which, as we have said, we do not believe is warranted, plaintiff's conduct, viewed either as a violation of defendant's right-of-way under the ordinance or as the act of one who deliberately steps from a place of safety into the path of danger without giving reasonable heed to the possible consequence of her act, unquestionably made her guilty of contributory negligence and precluded any right of recovery. *Killian v. McCourt,* 69 Colo. 455, 194 Pac. 936; *Jones v. Florios,* 248 Mich. 153, 226 N.W. 852; *Hizam v. Blackman,* 103 Conn. 547, 131 Atl. 415. It is true plaintiff testified that as she stepped from behind the streetcar before going on across Colfax she looked to her right and "didn't see anything." However, she also said she could see down Colfax to "about Ash or Albion." Ash is the second street west of Birch and Albion the third, so she had a clear range of vision for more than three blocks. Since it is unquestioned that defendant's car turned on to Colfax at Colorado Boulevard, the first intersection west of Albion, it is certain that when plaintiff looked, the car which struck her was within the scope of her vision whether she saw it or not. To have looked in such a manner as to fail to see what must have been plainly visible was to look without a reasonable degree of care and is of no more effect than if she had not looked at all. *Gunby v. Colorado & Southern R. R. Co.,* 77 Colo. 225, 235 Pac. 566; *Nucci v. Colorado & Southern Ry. Co.,* 63 Colo. 582, 169 Pac. 273; *Denver City Tramway Co. v. Cobb,* 164 Fed. 41, and *McLennon v. Whitney-Steen Co.,* 63 Colo. 568, 167 Pac. 771. See,

also, *Mertens v. Lakeshore Yellow Cab & Transfer Co.,* 195 Wis. 646, 218 N.W. 85; *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, and *Chase v. Thomas,* 7 Cal. App. (2d) 440, 46 P. (2d) 200.

 Under the evidence the doctrine of last clear chance is inapplicable in the case at bar since to be available to a plaintiff guilty of contributory negligence it must "be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence." *Grand Trunk Ry. Co. v. Ives,* 144 U.S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. See, also, *Liutz v. Denver City Tramway Co.,* 54 Colo. 371, 131 Pac. 258.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.

MR. JUSTICE OTTO BOCK dissents.

MR. JUSTICE OTTO BOCK dissenting.

I have some doubt with respect to the sufficiency of the evidence to support the family-car doctrine. Otherwise, I think the evidence upholds the findings of the trial court. True, plaintiff did not make a strong case, but when we reflect that it was solely within the province of the trial court to decide upon the credibility of witnesses and the weight to be given to their testimony, and that under the circumstances every fact necessary to support the findings is presumed to have been found in favor of the prevailing party, it is my opinion, from a careful perusal of the record, that there was sufficient conflicting evidence to sustain the findings.