No. 15,714.

AMOS *v.* REMINGTON ARMS COMPANY ET AL.
(188 P. [2d] 896)

Decided January 5, 1948.

400

Messrs. McDougal & Oakes, for plaintiff in error.

Mr. Edgar McComb, Mr. Godfrey Nordmark, Mr. Albert E. Zarlengo, for defendants in error.

Mr. Justice Luxford delivered the opinion of the court.

This suit for personal injuries and property damage grew out of an automobile accident. We will herein refer to Otis Amos, plaintiff in error, as Amos; and Remington Arms Company, and Vern S. Davis, defendants in error, will be designated as the Arms Company and Davis, respectively.

Minnie Armstrong was notified at the Arms Company's plant, where she was employed, that her house in Denver was on fire. The Arms Company, her employer, furnished an automobile and one of its employees, Davis, a driver, to take her home. As they proceeded east on Sixth Avenue their car collided with the Amos automobile, which was being driven south on Sheridan Boulevard. Both cars were wrecked and Minnie Armstrong and Davis, and Amos, and his wife and sister-in-law, who were in the car with him, all sustained serious personal injuries. Thereafter Minnie Armstrong instituted an action against the Arms Company, Davis, and Amos for damages for personal injuries sustained by her in the collision. Amos, in his answer and cross complaint denied any liability for the injuries resulting from the accident and alleged that the collision was caused by the carelessness and negligence of Davis, and he prayed for judgment against Davis and the Arms Company for injuries caused thereby. After hearing the

evidence on that issue the court sustained motions interposed by the Arms Company and Davis for directed verdicts in their favor and based upon the ground that the accident occurred as a direct and proximate result of the joint and concurrent negligence of both drivers. Verdicts were returned by the jury in accordance with the court's direction and appropriate judgments followed. Amos brings the case here, specifying the ruling and order of the court as error.

West Sixth Avenue is a four-lane highway extending from Federal Boulevard in Denver to Howell Avenue in Jefferson county near the Arms Company's plant. The highway was surfaced with an oil and gravel mixture commonly known as "black top," and was, at the time of this accident, in good condition. The road consists of two center lanes, one for east bound and one for west bound traffic, each lane being approximately forty-eight feet wide, and the lanes are separated by a six-foot strip. On the north and south sides of this two-lane highway there are narrow roads running parallel to the through roads, designed for local traffic. The accident occurred about nine o'clock P.M. December 20, 1943; it was a dark, clear night; the highway was dry and free from ice or snow; and the headlights of both cars were turned on. Both drivers were familiar with the intersection, Davis especially so because he had driven through it several times a day for twenty months prior to the accident. He not only knew it was a busy crossing but also that, driving east, when he crossed the middle of Sheridan Boulevard, he entered the City and County of Denver, where the speed limit was twenty-five miles per hour.

Davis testified that he was driving not to exceed thirty-five miles per hour at the time of the accident; that he did not see the Amos car until he was within fifteen feet of it, and when it was too late to avoid the collision. Mrs. Armstrong, riding in the front seat with him, testified that at that time, he was driving "almost

sixty miles an hour." Amos, driving south on Sheridan Boulevard, stopped when he came to Sixth Avenue, looked, and saw the lights of the Davis car which was approaching from the west, twelve to fourteen hundred feet away. He proceeded across the intersection, looked again and saw the Davis car one and one-half to two blocks away, finally, as he passed into the traffic lane upon which Davis car was approaching, he looked again and estimated the car was one hundred fifty feet away. Then, for the first time, he realized the Davis car was approaching at a high rate of speed. He had shifted into second gear, was going "somewhere between five to eight miles per hour," and had proceeded approximately two-thirds of the distance across this lane when the Davis car struck his squarely in the center. He says that the Davis car was going "between eighty and one hundred miles an hour" at the time of the collision. His wife, in the front seat with him, fixed the speed at sixty-five to seventy miles per hour, and Mrs. Jost, his sister-in-law, in the back seat says Davis was driving at least sixty miles per hour and that Amos was going fifteen miles per hour. Amos testified that Davis said to him right after the accident: "I was taking a lady to a fire. * * * I was driving fast and didn't see .you."

At the time of the accident the following statutes were in effect:

"Any person who drives any vehicle in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving." S.L. '39, p. 229.

"(a) The driver of a vehicle shall stop as required by this part at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said

through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.

"(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed." 2 '35 C.S.A., c. 16, §210.

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.

"(b) Where no special hazard exists the following speeds shall be lawful but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful: * * *

"3. Forty miles per hour on open mountain highways; twenty miles per hour on narrow, winding mountain highways and blind curves; 60 miles per hour under other conditions." 2 '35 C.S.A., c. 16, §189.

"(a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway." 2 '35 C.S.A., c. 16, §208.

■■ .Whether or not either Davis or Amos or both were negligent in violating the traffic laws, and whether said negligence was the proximate cause of this accident, or whether it was caused by the joint and concurrent negligence of both, were questions of fact for the jury to determine. "Negligence is generally for the jury, and always so when the measure of duty is reasonable care." *Higgins v. City of Boulder,* 105 Colo. 395, 98 P. (2d) 996. Amos had a right to assume that the Davis car was not approaching at a negligent rate of speed. *Golden Eagle Dry Goods Co. v. Mockbee,* 68 Colo. 312, 315, 189 Pac. 850. Minnie Armstrong—in the car with Davis, Amos and his wife, all testified that at the time of the acci-

dent the Davis car was being driven at a speed exceeding sixty miles per hour, the maximum speed limit fixed by the state law. It appears from the record that the Davis car traveled one hundred fifty feet while the Amos car was going less than twenty feet, and that it collided with his car when he was two-thirds of the way across that lane of the highway. This would strongly indicate that the Davis car being driven seven or eight times as fast as was the Amos car. The situation, however, does not lend itself to mathematical exactness. The accident happened, and these were questions to be determined by the jury.

█ The right-of-way rule laid down in *Andrus v. Hall*, 93 Colo. 526, 27 P. (2d) 495, applies here. In that case we said: "Richard [Andrus] was violating the law, both as to speed and failure to have his car under control at a crossing, and that crossing one which he well knew to be dangerous. A driver cannot be required to yield the right of way when his inability to know and act is chargeable to the lawless conduct of him who claims it. *Boyd v. Close,* 82 Colo. 150, 257 Pac. 1079."

█ We said also, in *Phillips v. Denver City Tramway Co.*, 53 Colo. 458, 465, 128 Pac. 460: "It is equally certain that this court has never held that a plaintiff was guilty of contributory negligence, as a matter of law, when some fact or element was present that tended to lull the plaintiff into a sense of safety, and caused him to perform or fail to perform the act or acts upon which the contributory negligence was sought to be predicated."

The district court erred in directing the verdicts, and the judgment is therefore reversed and cause remanded.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE JACKSON concur.