## No. 17,224.

SEIFRIED *v.* MOSHER ET AL.

(268 P. [2d] 411)

Decided March 1, 1954.   Rehearing denied March 29, 1954.

Messrs. WOLVINGTON & WORMWOOD, for plaintiff in error.

Messrs. MABRY & MABRY, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared in the trial court where defendants in error were plaintiffs and plaintiff in error was defendant.

Plaintiffs are husband and wife. The action was instituted to recover damages allegedly sustained by them as the result of an automobile accident in which the car driven by defendant collided with the one in which they were riding. The accident occurred at an intersection of country highways near the town of Swink, Colorado. Plaintiffs alleged that the damages claimed by them were proximately caused by the negligence of defendant in driving his car. Defendant denied that he was negligent, and alleged that plaintiffs were guilty of contributory negligence, and by counterclaim he sought judgment for the amount of damages sustained by him. The issues were submitted to a jury and resulted in verdicts in favor of plaintiffs. The jury awarded to the husband damages in the sum of $290.00, and the verdict in favor of the wife was for $5,110.00. Judgments were entered upon the verdicts, and defendant, seeking reversal, brings the cause to this Court by writ of error.

Counsel for defendant asks reversal of the judgments on several grounds, including the following:

"The Court erred in denying defendant's Motion for a Directed Verdict on plaintiffs' Complaint. There was no evidence of negligence on the part of the defendant but even assuming there was, the plaintiffs were guilty of negligence or contributory negligence as a matter of law.

"The Court erred in denying defendant's Motion for a Directed Verdict on defendant's Cross-Complaint.

"There being no evidence of negligence on the part of the defendant and the plaintiffs being guilty of negli-

gence as a matter of law, the trial court should have directed a verdict in favor of the defendant on his Cross-Complaint in the sum of $245.10, the stipulated amount of his damages."

It also is argued that the trial court erred in giving instructions, and in refusing to give one instruction tendered by counsel for defendant.

The evidence essential to an understanding of this case is, in substance, as follows: Plaintiffs were driving south on a north-south road and defendant was travelling west as each car approached the intersection where the collision occurred. Each of the roads was surfaced with gravel, and there was little difference as to their condition, or the amount of travel thereon. There was an irrigation ditch running parallel to the east-west road on the north side. It was built in such a way as to be on higher ground than the level of either road, and as plaintiff travelled south, just prior to entering the intersection, it was necessary for him to drive up over the raise caused by the ditch. At the time in question, weeds had grown up along the ditch and obscured the view of vehicle drivers at this intersection. A few feet from the intersection there was a stop sign on the north-south road which required persons travelling south, as plaintiffs were doing, to come to a stop before entering the intersection. There is evidence that plaintiff Oliver Mosher came to a complete stop, looked to his left and could see no westbound traffic; that he listened and could hear nothing; that he put his car into low gear and proceeded to cross the intersection; that when the front of his car was at about the center line of the highway, defendant's car was forty or fifty feet away travelling between fifty to sixty miles per hour; that it struck plaintiffs' car "dead center"; that defendant could have passed behind plaintiff "as well as hit me"; that defendant had 140 tomato hampers or baskets in his 1941 Chevrolet touring car, that they were in the trunk, the back seat and also stacked up to the roof in the front of the

car on the passenger side next to defendant driver; that the right half of defendant's windshield was broken by the baskets being thrown against it; and that plaintiff measured defendant's skid marks back from the point of impact for a distance of 87 feet (the courtesy·patrolman testified to "about 15 feet" of such marks). Defendant lived in the vicinity of the intersection, knew the dangerous character of the crossing, and had observed other collisions that had occurred at the same place. Plaintiffs were strangers to the area.

On the trial, each of the parties testified that the other made statements and did acts which might be construed as having been said or done from a consciousness of guilt concerning the cause of the accident. All such statements and damaging inferences from conduct were denied by the one to whom they were attributed. The evidence hereinabove mentioned is by no means admitted. On most every material question there is evidence which places in sharp dispute the pertinent facts. From the printed page it might be said that the weight of the evidence was in favor of defendant; however, our court is not the judge of the weight of the evidence or of the credibility of witnesses, and the fact that we might resolve the issues of fact from a consideration of the record alone, in a manner at variance with the findings of the jury, will not justify a reversal, if the verdicts of the jury are supported by competent evidence.

The statute governing traffic at rural intersections (Chapter 16, section 210, '35 C.S.A.), provides as follows:

"(a) The driver of a vehicle shall stop as required by this part at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said

through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.

"(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

Questions to be Determined.

First: *Must we say as a matter of law that, under the evidence considered in the light most favorable to plaintiffs, no competent showing of negligence on the part of defendant was made; or that, assuming negligence of defendant as a matter of law, plaintiff Oliver Mosher was guilty of contributory negligence?*

▇ This question, in each phase thereof, is answered in the negative. The ultimate fact upon which determination of the controversy depends involves the question as to whether plaintiffs or defendant had the right of way. It is clear that plaintiffs' car entered the intersection before that of defendant. Under the statute hereinabove quoted plaintiffs had a right to proceed unless defendant's car was "approaching so closely as to constitute an immediate hazard." The phrase quoted necessarily imposes due care and caution on the part of the approaching driver under all the facts and circumstances present. Our court in *Amos v. Remington Arms Co.,* 117 Colo. 399, 188 P. (2d) 896, said, inter alia: "Whether or not either Davis or Amos or both were negligent in violating the traffic laws, and whether said negligence was the proximate cause of this accident, or whether it was caused by the joint and concurrent negligence of both, were questions of fact for the jury to determine. 'Negligence is generally for the jury, and always so when the measure of duty is reasonable care.' *Higgins v. City of Boulder,* 105 Colo. 395, 98 P. (2d) 996."

■ Defendant's counsel argue that our opinion in *Fabling v. Jones,* 108 Colo. 144, 114 P. (2d) 1100, is controlling in the instant case. In that opinion we said, inter alia: "To have looked in such a manner as to fail to see what must have been plainly visible was to look without a reasonable degree of care and is of no more effect than if she had not looked at all." It is contended that this statement is applicable to the conduct of the driver of plaintiffs' car. We cannot, however, say as a matter of law, under the peculiar circumstances of the instant case, that plaintiff Oliver Mosher "looked in such a manner as to fail to see what must have been plainly visible." Instruction No. 10, given by the court, passed to the jury the identical question as to whether the driver of plaintiffs' car looked "in such a manner as to fail to see what must have been plainly visible." By its verdict the jury must have found that defendant's car was not "plainly visible." We think there was sufficient evidence to support that finding.

■ Second: *Did the trial court err in giving instructions to the jury, over the objections of defendant's attorney or in refusing to give an instruction tendered by him?*

This question is answered in the negative. Instruction No. 6, given by the court, is as follows: "You are instructed that it is not enough for the driver of an automobile, which has collided with another automobile, to show simply that at the time of the collision, he was operating his automobile at a lawful rate of speed, but that he still remains bound to anticipate that he may meet persons at any point of the road, and that he must, in order to avoid a charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with other persons using proper care and caution, and, if the situation requires it, he must slow down and stop." The objection made to this instruction was that, "it infers that there was evidence of driving at an unlawful rate of speed when there is no such evidence in the case,"

162

and that it, "is probably an instruction of 'Last clear chance,' and there is no 'last clear chance doctrine' in this case." Although the instruction as given is not a model to be followed in cases of this kind, and might be objectionable on grounds other than those stated; when considered in connection with the instructions as a whole we are satisfied that no error was committed in giving it. The specific objections to which the court's attention was directed were not good.

Instruction No. 14 was as follows: "It is provided by Statute of this state that: 'Any person driving a vehicle upon the highway shall drive the same at a careful and prudent speed not greater or less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, the weather conditions and the condition of the vehicle he is then operating, and of any other conditions then existing. No person shall drive any vehicle upon the highway at such speed as to endanger the life, limb or property of any person, nor at such speed as to prevent him from retaining complete control of said vehicle so as to be able to slow or stop the same in order to avoid a collision with any other vehicle then within range of his vision.' "

It is apparent from the briefs on file that the foregoing instruction was taken from the case of *Grunsfeld v. Yenter*, 100 Colo. 570, 69 P. (2d) 309. The statute quoted in the instruction in that case, chapter 122, S.L. '31, was repealed in 1935 and was not a statute in force at the time of the accident involved in the instant case. Counsel on both sides, and the trial court, were unaware of the fact that the statute had been repealed and another, of somewhat similar import, had been adopted dealing generally with the same subject matter. Counsel for defendant tendered an instruction in the language of the statute in force at the time of the accident and this instruction the court refused to give. The tendered instruction was as follows:

"The Statutes of the State of Colorado applicable in this case provide as follows:

" '(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.

" '(b) Where no special hazard exists the following speeds shall be lawful but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:

" '1. Twenty-five miles per hour in any business district; '2. Thirty miles per hour in any residence district; '3. Forty miles per hour on open mountain highways; twenty miles per hour on narrow, winding mountain highways and blind curves; 60 miles per hour under other conditions.

" '(c) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.' "

It is apparent that subsection (b) of the tendered instruction is inapplicable to the instant case for the reason that defendant himself admitted that he knew that a "special hazard" existed at the intersection in question, and from all the evidence it is very clear that the provisions of the law, relating to speed where "no special hazard exists," where wholly inapplicable. A comparison of the remaining portions of the tendered instruction, with the one given by the court, will lead to the conclusion that they are substantially the same. Tech-

nically it is true that the trial court misinformed the jury by the statement that the instruction actually given was "provided by statute in this state." This technical error is not ground for reversal without some misinformation concerning the substantive law governing the rights and liabilities of the parties under the particular circumstances of the case.

We are not concerned with the statement of the court relating to the source of the law. We are concerned only with the question as to whether the court substantially covered the law applicable to the facts. Our attention has not been directed to any particular legal right, duty or liability which might be involved under the tendered instruction, which is not within the coverage of the language employed by the court in the instruction which was given.

Counsel for defendant quotes from volume 53 American Jurisprudence, page 433, section 542, as follows: "As a general rule where the law governing a case is expressed in a statute, the court in its charge not only may, but should, use the language of the statute, and may, indeed, be guilty of error *if it employs language which constitutes a departure in an essential respect from the statute.*" (Emphasis supplied.) No attempt has been made to show where the instruction given, as applied to the facts of this case, "constitutes a departure in an essential respect from the statute," which was in force at the time of the accident. The trial court in the instruction as given, substantially stated the applicable law, and, when taken into consideration with the instructions as a whole, it could not have prejudiced either of the parties to this cause.

The contention of counsel for defendant, that the verdict of the jury awarding damages to Lucy Mosher was excessive, is without merit.

The judgment accordingly is affirmed.

Mr. Justice Alter and Mr. Justice Holland dissent.

Mr. Justice Clark not participating.