## No. 20857.

SIDNEY HOUSTON MCSPADDEN, ETC. *v.*
GEORGE ALBERT MINICK.
(413 P.2d 463)

Decided April 18, 1966.     Rehearing denied May 9, 1966.

VICTOR E. DEMOUTH, for plaintiff in error.

WORMWOOD, O'DELL and WOLVINGTON, PAUL D. REN-NER, BYRON G. ROGERS, JR., for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SCHAUER.

THE parties appear here in the same order of their appearance in the trial court. They will be referred to as they there appeared.

There are two separate causes of action set forth in plaintiff's complaint. The first claim is by the plaintiff in his capacity as guardian of Terry Joseph McSpadden, a minor of the age of four and one-half years, for injuries suffered by the minor who, while a pedestrian, was struck by a vehicle operated by the defendant, on January 28, 1962.

The second claim is by plaintiff in his own behalf, as father of the injured minor, for recovery of medical, surgical and hospital expense for care and services rendered to the minor child as a result of the accident.

In his answer, defendant denies liability and pleads as an affirmative defense contributory negligence on the part of the minor, and unavoidable accident.

The trial commenced on April 23, 1963, and continued through three days thereafter. At the close of plaintiff's case in chief, defendant moved for dismissal of the complaint upon the ground that plaintiff had failed to prove

a prima facie case. The court reserved a decision on the motion. At the close of all of the testimony, defendant renewed his motion to dismiss, which was granted by the court, and motion for a new trial was dispensed with.

On May 8, 1963, plaintiff filed his motion for leave to file a motion for a new trial and a motion for a statement of findings by the court, under the provisions of rule 41(d), R.C.P. Colo. The court denied both motions.

In his summary of argument, plaintiff alleges error in the court's action in (1) granting defendant's motion to dismiss the complaint; (2) entering a directed verdict of dismissal for defendant at the close of defendant's case; (3) denying a motion of plaintiff at the close of defendant's case for a directed verdict in favor of plaintiff as to liability and the submission to the jury of the amount of damages only; (4) refusing plaintiff's request that the jury be permitted to view the physical facts at the scene of the accident, and (5) denying plaintiff's motion for leave to file a motion for a new trial and for a statement of findings by the court.

The main issue is covered by the plaintiff's arguments numbered (1) and (2), *supra*. In his attempt to establish negligence on the part of the defendant, the plaintiff relied largely upon his cross-examination of the defendant himself, and of the defendant's witnesses. We will summarize briefly the testimony of the defendant.

On the day in question the defendant, accompanied by his wife and daughter, had spent the afternoon at Evergreen Lake. About sundown he was returning on U.S. Highway 40, passing through Golden and proceeding eastward. It was dark by the time he reached the intersection of the highway and McIntyre Street, where there was a traffic light. He was driving a 1951 station wagon, which he had been driving for three years, and had twenty-five years of driving experience; he had driven through this area a number of times. There were no other cars traveling the highway in either direction and nothing to obstruct his view to the east. After pass-

ing the traffic light he was driving at a "moderate rate of speed," estimated by him as betweeen thirty and forty miles per hour. His headlights were on "low beam" and illuminated the highway for more than 100 feet. At the next intersection, which is Lupine Street, there is a filling station and store on the southwest corner, equipped on the outside with a reflector-type light, and there were lights in a laundromat and possibly other buildings across the street. Evidently, these lights were of little use in illuminating the highway. There were no sidewalks or marked curb lines.

The defendant was looking directly ahead and, as he approached the Lupine intersection, his lights picked up young Terry, not over 100 feet distant and just east of the intersection. The boy was running across the highway, almost at right angles, in a northerly direction. Momentarily, the boy turned around and tried to return across the highway. Immediately, the defendant "slammed on" his brakes and kept them set. He did not sound his horn because there was not sufficient time, and to do so would further confuse the boy. He did not swerve his car in an attempt to avoid the accident because he did not know which way the boy would dodge. By the time he struck the boy, the defendant's car was "almost at a stop" and rolled but a few feet forward after the impact. The right front grill of the car struck the boy, throwing him over the hood and to the side of the highway. The defendant ran to the store, reported the incident and an ambulance and the State Patrol were called.

The neighboring witnesses corroborated the defendant's testimony as to the events he related subsequent to the impact. Leonard and Robert Emerson were sitting in a car in front of the laundromat across the street, while one Naslund was waiting on a customer in his store across the street. All of the witnesses testified that they heard the screeching of brakes and saw the defendant get out of the car, pick up the boy and carry

him toward the store. The boy was picked up about ten feet in front of the car.

In addition to the above, and the medical testimony as to the extent of the boy's injuries, there was other testimony of one Lewis Sanders, a patrolman for the State Highway Department, who reached the scene of the accident at six o'clock that evening. He testified as to skid marks leading from the Lupine intersection to the point where defendant's car came to rest fifty-four feet east of the intersection. The posted speed limit in this area is forty-five miles per hour. He was cross-examined as to a certain complicated formula adopted by a traffic institute with a view to establishing the speed of a car from the length and nature of skid marks in such circumstances as these. Applying the theory of this formula to the physical facts that he found from his investigation, the maximum speed at which the defendant had been driving was between thirty-eight and forty-four miles per hour, which was within the posted speed limit. He testified as follows:

"Q Did you find any evidence whatsoever that he [the defendant] was exceeding the speed limit?

"A No, sir, I didn't."

The relief granted by the trial court was a judgment of dismissal. The judge stated:

"The Court read all the cases cited pertaining to the various motions presented to the Court at our last session, and the defendant's motion to dismiss for the reason of no showing of negligence on the part of the defendant will be granted. All other motions will be denied. * * *."

Thus, the record succinctly reveals the basis of the trial court's ruling and effectively disposes of plaintiff's contention number (2) relative to the entry of a directed verdict. Clearly, the court's order granted the defendant's motion to dismiss the complaint.

Upon careful consideration of the total evidence presented by the plaintiff we are compelled to agree

that the trial court was justified in holding that there was a failure to establish a prima facie case. The plaintiff's argument relative to the alleged acts of negligence of the defendant is of a technical nature. For example, it is asserted that the defendant was negligent because he failed to sound his horn. To this, and similar assertions, we adopt the following statement as contained in the brief of counsel for the defendant:

"To require defendant, * * * is to require him to be a perfect man in his attempt to perform all statutory requirements to the letter, not merely holding him to the standard of a reasonable, prudent man under these circumstances. * * *."

It is generally held that a defendant who does all that a reasonably prudent man would do to avoid an accident of this nature is not guilty of negligence. *Dennis v. Johnson,* 136 Colo. 357, 317 P.2d 890, and *Fabling v. Jones,* 108 Colo. 144, 114 P.2d 1100.

We find no merit in arguments 3, 4 and 5, *supra,* advanced by the plaintiff. The court was not justified in directing a verdict in favor of the plaintiff at any point in the trial; the motion for a new trial was not filed within the time required by our Rules of Civil Procedure, and the filing of such a motion had already been dispensed with. The court made comprehensive oral findings of fact at the close of the case, and the other matters complained of were within the sound discretion of the trial judge.

A careful review of the evidence in this case can lead to but one conclusion, namely, that the undisputed testimony and all inferences to be drawn therefrom show that the defendant was not guilty of actionable negligence. To prevail, the plaintiff had the burden of proof to show such negligence, and the court properly found that he had not sustained this burden.

When a trial judge, after considering all of the evidence, is convinced that there is no basis upon which a verdict in favor of the plaintiff could be supported,

it becomes his duty as a matter of law to sustain a motion for dismissal.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur.