## No. 9062.

### LEBSACK v. MOORE.

1. NEGLIGENCE—*Driver of Auto Car.*  The defendant driving an auto car upon a road with which he is acquainted, and ascending from the south a hill, the other aclivity of which is hidden from view, and knowing that travelers may be expected to be ascending the hill from the north, passes another auto car at great speed, shortly after commencing the descent, and failing to see one ascending from the north upon a motor cycle, collides with him, doing serious injury.  Held a clear case of negligence.

2. CONTRIBUTORY NEGLIGENCE—*Sudden Peril.*  A party confronted by sudden peril from the negligence of another is not to be charged with contributory negligence for every error of judgment where instantaneous action is required.

*Error to Larimer District Court, Hon. Neil F. Graham, Judge.*

Mr. P. D. NELSON, Messrs. LEE & SHAW, for plaintiff in error.

Mr. JOHN H. SIMPSON, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THE plaintiff below, defendant in error, recovered judgment against plaintiff in error, in the sum of $3,250.00 as damages for injuries sustained by reason of the alleged negligence of defendant, and in a collision between plaintiff's motorcycle and defendant's automobile.

The collision occurred at a point on the Lincoln highway about three miles south of the city of Loveland, which road

at that point runs north and south. The plaintiff, a young man about twenty years of age, was proceeding south on his motorcycle, and defendant from the opposite direction with his automobile. The plaintiff had turned into this highway from a road leading from the east, and at a point approximately 600 feet from where the accident occurred. Between the point where plaintiff turned into the highway and the location of defendant at the time, was the apex of a hill which was apparently of sufficient elevation to prevent either from seeing the other. Both were proceeding up hill, and toward each other.

The plaintiff had passed over the apex of the hill and to a point about 25 feet beyond, when the collision occurred.

The defendant assigns as error the refusal of the court to direct a verdict in his favor because of the alleged insufficiency of the evidence, and error in giving certain instructions; also the refusal to give other instructions tendered.

The plaintiff Moore, testified that after he turned around the corner, and started up toward the top of the hill, he rode on the right hand side of the traveled part of the road. That this brought him at about the middle of the highway. He further says:

"When I turned the corner, I saw no one in the road, no one ahead of me, and was not aware of any one's presence in the road until I got to the top of the hill. The first I noticed was two cars facing me, one right on each side of the road, about six or eight feet apart, I should judge. There was no signal given. As I came to the top of the hill I was riding between eighteen and twenty miles an hour. The automobiles, when I first saw them, could not have been over one hundred fifty feet away. When I saw them the only chance I thought I had was to go between them, there was enough room to go between them, and I threw my weight on the left hand side of the motorcycle and speeded up and tried to go between them and that is

the last I knew. After the accident I was sitting up in the middle of the road. It was Lebsack's car that was in front of me. I don't know how far I traveled after turning to the left; the machine was struck right back of the foot board on the motorcycle; that is back where the pedals are. I could not tell whether the car coming toward me came straight or turned. The cars were right on me on each side of the road; it was on me so quick I could not do anything. I do not know what occurred after being struck except I was sitting up in the road and some fellow was asking me if I was hurt pretty bad, and I tried to stand up and the bone was just chattering; that is the last thing I can remember about it. The next I knew anything about the matter I was in the hospital at Loveland, it must have been two or three days afterward."

It appears that immediately preceding the accident the defendant had driven around, and to the left of, another car occupied by two persons, M. G. Nelson, cashier of the First National Bank at Ft. Collins, and Mr. Eves, the president of that institution. Mr. Nelson testified in substance:

"At the time the Lebsack car went around we were going twenty-five miles an hour. Mr. Eves and I were discussing driving on highways, and the different rates of speed, and we happened to be watching the speedometer, and I said to Eves, 'We are driving just 25 miles an hour now.' This was just at the instant the other car appeared. I don't know how long it took, he was going faster than we were; he went right by us. I don't know how long it took, he was going faster than we were, and we were driving twenty-five miles an hour when he came up; he went around us, I don't know how many lengths of our car we traveled while Mr. Lebsack was going around. * * *

I noticed this motorcycle about the same time I saw the car; it was practically on us when I saw it. It seemed like when I saw this man Lebsack I saw the motorcycle boy too, and about that time the accident happened. There was no appreciable time between my seeing them and the hap-

pening of the accident. It seemed to be all right at one time. We were going north on the road, and Lebsack came around our car, and as he got around and I looked up I saw the motorcycle about the same time, but the boy came right between us and he hit Lebsack's front wheel first, and that threw the motorcycle and the boy over toward us, and the boy back into Lebsack's car and ripped the fender and running board off Mr. Eves' car, as I remember it."

Mr. Eves testified:

I was present at the accident on August 17, 1915, and was driving my automobile, was driving approximately 25 miles an hour. Right as Mr. Lebsack was going around us Mr. Nelson and I were talking about speeds, and we were keeping the speedometer on the good roads right about 25 miles an hour. We were discussing this just as I noticed Lebsack getting up around us going by. Lebsack went around us quite speedily; passed within a very short distance. His rate of speed would be all guess work. I think he passed in a car length, but I might have been estimating it too rapidly. * * * I think Lebsack gave no warning signal at any time just prior to accident. I didn't see the boy, and didn't see his machine until he was coming over the front wheel of Lebsack's car, and right over the wheel. I heard the impact, heard the noise and saw the bulk coming over, one piece one way and one another. That is the first I saw or heard of it. * * * I remember of having said to Lebsack, 'Well, if I had known you were in such a hurry I would have stopped and let you go by,' or something like that. He said he didn't know what he had struck, and that he came back as soon as he could stop. He didn't know what had happened, he said. It is a pretty hard question to answer how far to the left of our car Lebsack's was at the time he was going by, it seemed to me he gave us good room. I think it was as much as anywhere from six to eight feet. He gave us plenty of room, swung clear around. I think it was fully that far, possibly more."

It will be seen from this that the defendant had just driven around the Eves car, and at a rate of approximately fifty miles an hour. He drove around on the left side of the Eves car, which would put him on the side of the road, or the traveled part of it, which would naturally be taken by the plaintiff. He gave no warning of his approach, and it is patent that when the plaintiff first saw the cars, they were about abreast, and as stated by plaintiff and corroborated by Eves, there was from six to eight feet between them.

Eves testified further that the defendant's car was in front of him when the collision occurred. The defendant testified that he did not see the plaintiff until after the collision, but heard a sound at the time as if a stone had struck the fender.

This testimony furnishes sufficient evidence of negligence to go to the jury and we think that upon the whole evidence the jury was amply justified in finding for the plaintiff.

The defendant was fully acquainted with the road, had full knowledge of the hill which he was ascending, and that travelers might reasonably be expected to be approaching from the other side, and that they would be expected to pass the Eves car on the same side of the road upon which he was traveling in passing the car in front of him. His conduct appears to be a palpable want of the exercise of ordinary care.

As to the alleged contributory negligence of defendant it appears that the plaintiff saw both cars approaching him, with the defendant's car at the right, and not more than one hundred and fifty feet from him, and he was then compelled to either attempt to pass between them as he did, or attempt to pass to the right of defendant's rapidly moving car, which seemed to him at the instant more hazardous.

It was a question of the instant exercise of judgment. He was forced to this dilemma by what appears to be the speed mania of defendant, in which all duty and prudence

were clearly cast aside. Upon this point the court correctly instructed the jury as follows:

"A party suddenly realizing that he is in danger from the negligence of another is not to be charged with contributory negligence for every error of judgment when practically instantaneous action is required; so in this case, if you believe from the evidence that the emergency was not created by or contributed to by plaintiff's own negligence, and that the plaintiff just before he was struck by the defendant's automobile, might have acted differently and escaped the injury, if you also believe that the plaintiff was using ordinary care in seeking to avoid a collision, and while so doing he was struck by defendant's automobile, then it is your duty to find for the plaintiff in such amount as may be justified by the evidence."

The evidence fully justified this instruction, and it correctly states the law upon that subject. *Colorado Midland Ry. Co. v. Robbins*, 30 Colo. 449, 71 Pac. 371.

We have carefully considered suggested errors in the instructions of the court, and find no prejudicial error. Indeed, they are very complete and as favorable to the defendant as the law justifies in such a case. No good purpose can be served by a discussion of the criticisms offered.

The judgment is affirmed.

Hill, C. J., and Garrigues, J., concur.