## No. 15,128.

LEONARD ET AL. *v.* BAUER ET AL.
(149 P. [2d] 376)

Decided April 10, 1944.   Rehearing denied June 5, 1944.

Mr. LOWELL WHITE, Mr. WILLIAM K. RIS, for plaintiffs in error.

Mr. CHARLES ROSENBAUM, Mr. SOLOMON GIRSH, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

THE parties to this litigation are here in reverse order of their appearance in the district court. For convenience, we refer to them as plaintiffs and defendants, or by name. Plaintiffs recovered a judgment in the amount of $2,750.00 for the death of their minor son, alleged to have been caused, or contributed to, by the negligence of defendants, to reverse which the latter prosecute a writ of error.

Fred Reffel owned a Chevrolet truck that Ted Reffel, his brother, agent and employee, was driving at the time of the accident. Deceased, Reuben Bauer, aged 16, a brother-in-law of Fred Reffel, also his employee, was riding in the truck at the time. Hereinafter we shall refer to this truck, since two were involved, as the Reffel truck. Fred Reffel was sued jointly with the two defendants here appearing and although judgment was entered against him, he does not join in the case on error.

Defendant Sprague was the owner of a large truck, designated herein as the Sprague truck, which also was involved in the accident. Defendant Leonard was the agent and employee of Sprague and was the driver of the Sprague truck.

The Reffel truck was being used to deliver fish and

the Sprague truck was loaded with six tons of baled hay. On August 5, 1939, a collision of these two trucks occurred, resulting in the death of the two boys in the Reffel truck.

Plaintiffs charge in their complaint: "That said collision and the said death of Reuben Bauer, as a result of said collision * * * was due to the concurrent and simultaneous negligence and acts of said Glen Leonard and Ted Reffel, while engaged in the operation and driving of the respective trucks of the defendants A. M. Sprague and Fred J. Reffel, * * * all to the damage of plaintiffs in the sum of five thousand dollars."

Defendants, as a defense, deny negligence. They specify as points for reversal: "1. That the motions of defendants, Leonard and Sprague, for directed verdicts should have been granted. 2. That the testimony as to the condition of the highway at the joinder of Colorado 128 and U.S. 87 should not have been admitted."

In passing upon these points it is necessary to have clearly in mind the geographical situation, and a comprehensive understanding of the evidence and permissible inferences to be drawn therefrom. The uncontradicted evidence is that the Reffel truck was proceeding westerly and along the southerly or left-hand side of Highway 128 at a speed of approximately sixty miles per hour, and made no attempt to turn from its course along the southerly and wrong side of the highway until immediately before the collision; and that the Sprague truck was proceeding easterly along said Highway 128 at a speed of thirty-five to thirty-eight miles per hour. The Reffel truck struck the right-hand corner of the body of the Sprague truck with the result that both trucks were practically demolished, the driver of the Sprague truck injured, and the two boys in the Reffel truck killed.

The point of collision is not in dispute. As Highway 87 approaches Highway 128 from the south, it divides into two prongs at a point approximately two hundred

feet south of 128, and one prong makes a sweeping curve to the east and the other to the west; each of these prongs of the Y thus formed, enters 128 at points approximately two hundred eighty-five feet apart. The point of collision was about 100 feet west of the easterly entrance. Highway 128, at the place of the accident is upgrade for one traveling as was the Sprague truck, from west to east. There is testimony, admitted over the strenuous objection of defendants, that where the westerly prong of 87 enters 128 there is a dip, or depression in the road on the right-hand side, of such character as to cause a car, and particularly a truck twenty feet long, with a load of six tons of baled hay standing eleven feet from the ground, to sway very considerably if driven across it on the right-hand side of the road without reduction of speed. Defendant driver saw the Reffel truck beyond the easterly prong of Highway 87 proceeding westerly on the south side of the road, at the speed above noted. He states that he was of the opinion that the driver of that truck was on his wrong side of the road because he intended to make a left-hand turn into the easterly prong of 87, the north-south highway; and it is reasonably inferable from all his testimony that neither the speed of the Reffel truck nor the fact that it was on the wrong side of the road created any apprehension in him until it failed to turn south into Highway 87. On direct examination by his counsel, he said, as set out in the abstract of the record: "I was driving at 37 to 38 miles per hour on my own side of the road. There was nothing there which forced me or made it more convenient for me to go to the other side of the road. Then later I pulled to the left so that my truck was just about over the middle line if there had been one there. I did that because I thought the other vehicle was going to make a left-hand turn and not to lose my speed so that I would not have to shift and give him plenty of room to go around the corner."

There was no error in admitting proof of the dip

in the road two hundred feet west of the point of collision. There was evidence, at least facts are disclosed by the evidence from which it reasonably might be inferred, that when the collision occurred the Sprague truck was approximately in the middle of the road. The admitted proof of the dip tended to show that there was a reason for the Sprague truck's not being on the right or south side of the road wholly unconnected with the oncoming car, the reason being to avoid, without slackening speed, the swaying of the load by the dip which presumably defendant driver knew was there for he had driven the road more than fifty times. In other words, it tended to show a deviation from or violation of the rule of the road, requiring driving on the right-hand side, merely for the convenience of the driver of the Sprague truck. It was proper evidence because it tended to make probable a fact in issue; namely, whether defendant driver was, for his own purposes, out of his proper position or whether he was forced out of it by the emergency created by the oncoming truck. But it was not necessary for the jury to infer or conclude from this circumstantial evidence alone that defendant driver was in the middle of the road for his own purposes rather than because the oncoming truck was speeding or on the wrong side of the road, because his counsel brought out from him on direct examination the real reason indicated by the quoted testimony above. That testimony shows that defendant driver deviated from the rules of the road requiring him to drive on the right side thereof, not because of any apprehension from defendant's action in speeding or being on his left-hand side of the road, but so he himself would not have to slacken his speed at the easterly turn, if he and the Reffel truck arrived at approximately the same time, in order for it to make the turn. Defendants' counsel say in their brief: "He [defendant driver] watched the other truck carefully and decided that it was so close to the south edge that the driver of the Reffel truck was doing

that deliberately to indicate to Leonard that he was intending to drive straight into the cutoff." When the Reffel truck, proceeding on its wrong side of the road in violation of the rules of the road, passed the easterly turn, the Sprague truck was proceeding down the center line of the pavement in violation of the rules of the road.

We are not advised why the Reffel truck was on its left side of the road. No reason appears, and apparently the jury under the court's instructions found none sufficient in law, for it returned a verdict against the owner of that truck for its negligent operation. By these several violations of the rules of the road by the respective drivers of the trucks, both, not one of them, created a situation that endangered deceased. Counsel for defendants say in effect that the Reffel truck was on the wrong side of the road and its driver should have remained there and not have attempted to turn back to the north but continued on, passing the Sprague truck on its south side. Had he known the Sprague truck would remain where it was, doubtless he would have done so. Had the Sprague truck continued on its course down the center line instead of turning back four feet to the south, even with the driver of the Reffel truck attempting to turn to the north, a collision might have been avoided for the center of the Reffel truck struck only the right-hand corner of the Sprague truck. Such speculations but illustrate the folly of two approaching vehicles, each for its own purpose violating the rule of the road requiring driving on the right hand side thereof, and thus creating a dangerous situation to avoid the consequences of which there are no fixed rules. What action either will take to avoid the danger so created can be only a matter of an instantaneous guess by the other. When two drivers thus create a dangerous condition by each following a course along a highway which, under the rules of the road, he has no right to follow, the contention that either has a right to have a passenger, who has no control of either car, assume the hazard of the peril negligently so

created does not impress us as being either reasonable, or sound law. It was alleged in the complaint that the death of Reuben Bauer was due to the concurrent and simultaneous acts of negligence of the drivers of the two trucks. The evidence is sufficient to support the allegation. The jury so found and by that finding we are concluded. The court properly denied defendants' motion for a directed verdict.

We think no citation of authorities is necessary to support the conclusion at which we have arrived, but since counsel for defendants cite a number of cases, asserting they are authority for a contrary conclusion, we note the factual differences that distinguish them from the case at bar.

We find no fault with the legal principles which defendants assert should control courts in passing on motions for directed verdicts. Our attention is called to *Chicago, B. & Q. R.R. Co. v. Church,* 49 Colo. 582, 114 Pac. 299, in which we said: "A verdict based upon conjecture and inference, or upon the bare fact of killing, cannot be upheld." And to *Zang v. Wright,* 93 Colo. 80, 23 P. (2d) 580, in which we quoted from the opinion in *Westerkamp v. Chicago, B. & Q. Ry. Co.,* 41 Colo. 290, 92 Pac. 687, as follows: " 'A trial court should not submit to a jury the determination of a fact about which, from all the testimony, there can be no dispute.' "

The ultimate facts to be determined in the instant case were whether defendants were negligent, and whether such negligence was the proximate cause of the fatal accident. Various courses of action were open to the driver of the Sprague truck that he might have adopted. He drove for a distance in the middle of the highway and then tried to return to his proper position and the collision resulted. He might have obeyed the rules of the road and remained on the right-hand side. Having elected to drive down the middle of the highway, he might have continued to do so without attempting to return to his proper position. He might

have stopped his truck or slackened its speed. Which course an ordinarily prudent man would have adopted, and the effect of it if adopted, were peculiarly within the province of the jury and for its determination.

The case of *O'Mally v. Eagan,* 43 Wyo. 233, 2 P. (2d) 1063, upon which defendants strongly rely, differs factually from the instant case. Eagan, the defendant, was driving a car in which plaintiff was riding as a passenger. Eagan was on his right side of the road and left it in a desperate but unavailing attempt to avoid an oncoming car driven by Mahoney on the wrong side of the road. In the instant case, defendant driver, in a last desperate effort to avoid a collision, attempted to get back from the center of the road, where he should not have been under the rules of the road, to the right side where he would have been if obeying the rules.

The case of *Goodson v. Schuster's Co.,* 10 La. App. 486, 120 So. 689, is factually similar to the foregoing case. Defendant quotes from it as follows: "Defendant's driver did finally turn to the right. But he did not do so before plaintiff had a right to believe that he would not turn. Plaintiff was not negligent in turning to the left. 'One compelled to turn to the left and wrong side of a road to avoid a collision because of another person's violation of the law of the road, is not negligent. [*Potter vs. Glassell,* 146 Ea. 687].'" In that case, plaintiff, obeying the rule of the road, was forced to violate it by imminent danger; in the case at bar defendants, violating the rule of the road in the face of imminent danger, were forced to attempt to obey it. No further comment is necessary to show the dissimilarity of facts in the two cases.

In *Alden v. Watson,* 106 Colo. 103, 102 P. (2d) 479, we quoted with approval the following from Blashfield's Automobile Law and Practice: "'Where the negligence of one person is concurrent with that of another and the concurring negligence of each produces a condition resulting in an injury to a third person, without negligence on his part, the third person may recover

damages for the injury sustained by reason of the concurrent negligence of the two, without regard to whose negligence was the proximate cause of the injury.'" We further stated: "The rule is similarly expressed in 45 C.J., p. 895, §476, and at page 924, et seq. §§487, 488. In all of these texts the rule is supported by a myriad of authorities which we deem it unnecessary to cite in this opinion."

In the case at bar, the drivers of both cars, for their own purposes, were where they had no lawful right to be; they were attempting to extricate themselves from the courses they had negligently adopted. It is not for us to say that if the Sprague truck had been where it lawfully should have been, on the south side of the road, that the Reffel truck would not or could not have avoided striking it; in other words, we cannot say as a matter of law that driving down the center of the highway was not a contributing cause of the collision and resulting death.

Defendants cite *Lebsack v. Moore,* 65 Colo. 315, 177 Pac. 137, and quote the following from an instruction given by the trial court which received our approval: "'A party suddenly realizing that he is in danger from the negligence of another is not to be charged with contributory negligence for every error in judgment when practically instantaneous action is required.'" In that case defendant was attempting to show plaintiff contributorily negligent in leaving his *right-hand* side of the road and attempting to go between two passing vehicles, one of which, defendant's, confronted him suddenly on his right-hand side of the road. This also was a case where plaintiff was forced out of his proper position on the road, and is not analogous to the instant case where defendant was wrongfully in the center of the road and forced by another's negligence to attempt to get over to the right side of the road to avoid a collision.

*Shaw v. Wilcox,* 224 S.W. 58 (Mo. App.) cited by defendants is not in point as an authority for a reversal of

the judgment in this case. There, defendant drove his car to his left side of the street for a purpose of his own, i.e., to stop at his sister's house. Plaintiff's driver seeing the car on the wrong side of the road, to avoid it turned his car to his left side of the road. Defendant attempted to get back to his right side of the road and his car collided with that of plaintiff on plaintiff's left side of the road. The jury found for defendant as to plaintiff's claim, and for plaintiff on defendant's counterclaim. Plaintiff was granted a new trial on account of error in the instructions. The court said:

"As the jury could hardly have found that neither party was negligent, this result must have been reached by finding that both were negligent, and therefore neither could recover — a result which might well be reached under the evidence. The court, however, granted plaintiff a new trial on the ground, as stated in the order, of error in giving instructions for defendant. From that order the defendant has appealed.

"██ As the evidence of each party exonerated him from negligence, and established the negligence of the other as causing the collision and injury, these questions were for the jury under proper instructions, and if defendant's instructions were wrong the court was justified in granting a new trial."

The basis on which the new trial was granted was that the jury must have found that both were negligent, "a result which might well be reached under the evidence." Proper instructions therefore were necessary. Here the finding of the jury was that both drivers were negligent and there is no error predicated on the instructions. This case supports our conclusion that the judgment of the district court was correct.

Judgment affirmed.