No. 16,184.

DOTTAVIO, DOING BUSINESS AS OTT COAL COMPANY ET AL.
v. LOHR ET AL.
(222 P. [2d] 428)

Decided August 21, 1950. Rehearing denied September 18, 1950.

Mr. Lowell White, Messrs. Davis & Lutz, for plaintiffs in error.

Messrs. Rinn & Connell, Mr. Clifford J. Gobble, for defendants in error.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

This is an action grounded on negligence. The accident involved occurred about eleven o'clock in the morning on a clear day. The record discloses without substantial dispute that plaintiff Plitry was traveling slowly north up a hill in a red pickup, immediately followed by two trucks loaded with feed; that plaintiff Lohr, driving a light car, also going north, passed these trucks and went back to her proper traffic lane on the east side of the highway ahead of plaintiff Plitry's pickup. The oiled highway was twenty-four feet wide, and straight. Defendant McCullough, an employe of defendant Dottavio, was driving south in a Chevrolet truck, carrying about 6½ tons of coal, and at a point over 800 feet south of the top of the hill, and about equal distance from the bottom, suddenly swung to his left diagonally across the highway for a distance of about 100 feet, where his truck collided with the Lohr car and it in turn was struck by Plitry's pickup. The Dot-

tavio truck came to rest in a deep ditch on the east side of the highway. The point of impact was near the east edge of the pavement, and the front end of the Lohr car struck the right side of the Dottavio truck behind the cab. Pursuant to verdict, judgment was entered in behalf of both plaintiffs against the defendants.

Reversal is sought, first, for insufficiency of evidence to support the verdict. It is vehemently and repeatedly insisted that defendant McCullough was driving properly on his own west side of the highway when he saw plaintiff Lohr approaching in his path and pulled to the other side of the highway to avoid a head-on collision, since the shoulder on his left was wide and that on his right was narrow and dropped off into a ditch eight or ten feet deep so that he could not have passed the car on the west side. Defendant McCullough so testified.

However, the testimony supporting this contention is sharply contradicted by that of other witnesses, including a high school teacher from Monte Vista, who with his wife, daughter and mother-in-law, was driving behind the Dottavio truck. He testified in substance that shortly after they came over the crest of the hill they saw the coal truck about 500 feet ahead of them make a turn to the left and hit the first car coming in that lane head on; that when they first noticed the situation the coal truck was about 400 feet from the approaching lead car and was going about forty-five miles an hour; that the lead car was then on its own side of the road, and that it was directly and entirely in front of the other cars; that no one was passing the string of cars going north; that at all times after he first saw the line of cars the coal truck had plenty of space to pass the approaching line of cars on his right had he kept to the right, and that he could even have passed on the shoulder on his right side of the highway which was fairly level and ten or twelve feet wide. This testimony as to the width and slope of the west shoulder is corroborated by

photograph Exhibit A, taken immediately following the accident, as well as by the testimony and plat made before the trial by a civil engineer which shows the west shoulder as 11½ feet and gives the depth of the west barrow pit as five feet, five inches at that point, but is contradicted by a patrolman who testified that the shoulder was six feet wide.

The teacher's wife testified that from the time they came over the crest of the hill she saw only the single line of traffic approaching them, with no car in the other lane, and that the shoulder on the west side of the road was wide enough so that any one could drive on it with an automobile or truck. The daughter testified that she saw the coal truck cross the highway and hit the black car, and that before the collision the approaching cars seemed to be in a single line of traffic; that she noticed nothing in front of the coal truck to obstruct his edge of the road. The mother-in-law testified that from the time she observed the line of traffic approaching from the south she did not see any car passing other cars. Plaintiff Plitry testified that at the time of the accident Mrs. Lohr's car was in front of him; that it had been there about half a minute and was in the proper lane of traffic; that it had passed him at the bottom of the hill; that after it had been in front of him a little while he saw the approaching truck about 100 feet away start to come across to his lane of traffic. Plaintiff Lohr testified that she had passed Plitry's pickup and got over to her lane of traffic and was headed toward the north; that she did not know how long after she was in her proper lane the collision occurred; that she saw the coal truck coming from the opposite direction and that it was up far enough so that it was safe for her to get around the pickup; that she thinks the coal truck was about 200 feet away when she got around the pickup.

Defendants' witness Watson, who was riding in a truck in the line of traffic going north, testified that when the Lohr car passed them it was in the middle of

the road; that he did not know whether or not it got in front of the Plitry pickup before the impact; that in passing them it wasn't on the west side, it was just traveling in the center of the road, and that he would consider there was plenty of room on the oncoming driver's right hand side to pass the Ford. Defendants' witness Diesing, in a statement made July 7, 1947, stated, "I talked to the truck driver [defendant McCullough] and he said when he applied the brakes the load threw the truck and caused him to lose control of the truck," and on cross-examination he testified again as to that statement. Defendant McCullough, upon being interrogated as to making this statement, replied that he did not remember. The issues of negligence and of contributory negligence presented by such conflicting evidence were plainly for the jury.

■ Reversal is sought on the further ground of error in instructions, both given and refused. Of the instructions given, objections were interposed to instructions numbered 1, 6, 12, 15 and 16. Consideration of these objections might properly be refused for the reason that they were not set out in the abstract as we have frequently declared necessary.

Instruction No. 1 is challenged at length on the basis of statements said to be made therein, but we are unable to find in the instruction any of the statements of which complaint is made. Arguments based on false premises may well be ignored. This instruction is the customary summary of the pleadings presenting the issues of negligence and contributory negligence as defined thereby and the grounds as therein alleged. It closes with the customary statement: "This is the substance of the pleadings of the parties herein, and their respective contentions, as well as a statement of certain issues involved, but the same is not to be taken or considered by you as constituting any evidence in the case." None of the pleaded issues had been eliminated and there was some evidence to support each stated ground. We find no

error in this instruction. *Staley v. Nazarenus,* 86 Colo. 326, 281 Pac. 358.

As to instruction No. 6, the specification was: "Instruction No. 6 includes sections of the statutes which have no relation to the evidence in this case, and the instruction says a violation of them is negligence. It is, therefore, prejudicial." The statutory provisions set out in the instruction are those with reference to driving in a careful and prudent manner; passing to the right, and giving at least one-half of the main traveled portion of the roadway; driving at speed greater than is reasonable and prudent; driving upon the right half of the roadway, and provisions as to the adequacy and adjustment of brakes. Each of these statutes is related in some degree to the evidence and violation of any would constitute negligence, except in case of justifiable deviation, and no objection was made on the ground of omission of such exception. Accordingly, the point specified is without merit. While not included in the specification, it is urged in the brief that it is stated in the instruction that violation of these statutes would constitute negligence on the part of defendants and does not show that they apply equally to the plaintiffs. The quoted statutory provisions covered those which plaintiffs claimed had been violated by defendants. If defendants submitted evidence from which finding of violation of statutes by plaintiffs or either of them might be found, and desired specific instructions as to the violation of such statutes, it was the duty of counsel to request such instructions based upon the evidence for his client, rather than object to the proper instruction based upon plaintiffs' evidence, and we assume that he did this by instructions 7 and 8, which were given by the court.

Instruction No. 12 was objected to, "because it is not the law of Colorado that there is a presumption of negligence against the driver who is on the wrong side of the road." Counsel presents no argument or authority in

support of his contention and he is mistaken in his statement as to the law.

Objection was made to instructions 15 and 16 as not requiring plaintiffs to prove each element of damage by a preponderance of the evidence. Those instructions have to do with determination of damages if the jury should find in favor of plaintiffs, and while each recites, "if you find from the evidence * * * for said plaintiff," rather than, "if you find from the preponderance of the evidence," neither instruction in any way contradicts the specific provisions of Instruction No. 4, that "to entitle the plaintiffs to recover in this case, they must prove by a preponderance of evidence that the injuries sustained by them, if any, were proximately and directly the result of the carelessness and negligence of the defendants, as alleged in their complaint." The objection to those instructions is captious.

▮▮ Objection is made to the refusal of the court to give certain tendered instructions. It is presented to us by the following specification: "Instructions tendered by the defendants and numbered 5, 6, 11, 8, 17, 18, 19, 20, 21, 24, 10, 14, 15 and 16 embraced the defendants' theory of the case and were concrete applications of the law, and should have been given to the jury." Our rule, 111 (f), requires that each specification "shall set out separately and particularly each point relied upon," while the specification before us lumps together fourteen tendered instructions without setting forth any point at all. Study of the instructions given convinces us that defendants' theory of the case was covered by them, and we shall not attempt to ferret out error in the refusal of the court to give these further instructions.

▮ Judgment of $3300.00 in favor of plaintiff Plitry is challenged as excessive and without sufficient evidence to sustain it, and it is urged that improper evidence as to loss of earnings was admitted which should have been stricken. The abstract fails to disclose any objection to such evidence, and the contention that loss of

earnings was not a proper element of damage cannot be sustained. There was evidence before the jury as to both temporary and permanent injury resulting from the accident, as well as damage to the truck and loss of earnings. The amount of compensatory damage was peculiarly a question for the jury and we cannot say there was not sufficient evidence to support the judgment relative thereto; therefore this specification is not good.

The judgment is affirmed.

MR. JUSTICE HAYS dissents.