No. 16,684.

ANKENY *v.* TALBOT ET AL.
(250 P. [2d] 1019)

Decided September 29, 1952.   Rehearing denied December 1, 1952.

314

.Mr. DARWIN D. COIT, Messrs. McNICHOLS, DUNN & NEVANS, for plaintiff in error.

Messrs. SANDHOUSE & SANDHOUSE, Messrs. WOLVINGTON & WORMWOOD, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THE parties appear in this court in the same order as in the trial court and we will hereinafter refer to them by name or as they appeared below.

Plaintiff, in his complaint, sought to recover damages resulting from an automobile collision which occurred

February 15, 1947, on Highway 113 north of Sterling, Colorado. He alleged that defendant Talbot negligently drove an automobile owned by defendant McKenzie and then being used in the course of Talbot's employment by McKenzie, and that Talbot's negligent operation of said car was the cause of injuries sustained by him. Defendant McKenzie admitted that his truck was being driven by Talbot, with his consent, and denied all other allegations of the complaint. He further defended upon the ground of contributory negligence on the part of plaintiff, and for counterclaim alleged that plaintiff's negligence caused the collision which resulted in damage to his automobile, and sought judgment for the loss thus sustained.

Defendant Talbot admitted that at the time of the accident he was driving a car owned by McKenzie; that the said car was being driven by him with McKenzie's knowledge and consent; and denied that he was then acting in the scope of his employment by McKenzie and that he negligently operated the automobile. In his second defense Talbot alleged that plaintiff, by the exercise of ordinary care could, and should, have seen and become aware of Talbot's position of peril and could have avoided the collision, all of which, as alleged, plaintiff failed to do. In Talbot's third defense he alleged contributory negligence on the part of plaintiff.

In further separate defenses it was alleged that plaintiff's injuries were solely due to his own negligence and that any injuries sustained by him were the result of an unavoidable accident. Talbot filed a counterclaim in which he alleged that plaintiff's negligence caused the accident and that as a result he received injuries and suffered damage, for which he prayed recovery.

Plaintiff answered the allegations of the counterclaims of McKenzie and Talbot by denying the negligence attributed to him, and alleging contributory negligence on the part of each of said defendants.

The case was tried to a jury and resulted in a verdict

in favor of Talbot on his counterclaim against plaintiff, in the sum of $4,531.00. By separate verdict defendant McKenzie recovered on his counterclaim against plaintiff the sum of $150.00. Judgment was entered on the verdicts and plaintiff brings the case to our court by writ of error.

Plaintiff and defendant Talbot were driving automobiles in opposite directions on said highway just prior to the accident. Talbot was driving north at about 9:15 o'clock at night. The vehicle he was driving was a pickup truck, the cab of which was occupied by Talbot, his wife, and four children. He was on his way from Sterling to the ranch where he was employed by McKenzie. If Talbot had driven straight into the McKenzie ranch he would have made a right turn from Highway 113. Travelling north, before reaching the entrance to the McKenzie ranch, there was a mailbox located on his left, or west, side of the road. He intended to stop at this mailbox before turning to the right to leave the highway and go into the ranch. When he was approximately 200 or 250 feet south of the mailbox he started to angle across the road going to the left, or wrong, side of the road. He intended to stop in front of the mailbox, remain in the truck, and reach out to see if there was any mail. He stated that he was travelling about twenty-five miles per hour when he started to angle from the right side of the road to the left side thereof. He said he angled across to the left side of the road and was going forward at about five miles per hour at the time of the impact, which took place about fifteen feet south of the mailbox. He testified that after angling across the road the truck was entirely off the surfaced portion of the highway and that he had moved a short distance in a straight line toward the mailbox on the left shoulder of the road. The post to which the mailbox was attached was nine feet west of the surfaced portion of the road. The shoulder of the road was seven feet wide, and the

point of impact of the cars was six feet west of the oiled line of the highway.

Plaintiff's automobile approached the scene of the accident from the north and the accident occurred in about the middle of a sharp incline, at the crest of which this car was first visible to Talbot as he began to cross to the left side of the road. The crest of this hill was 450 feet from the point of impact; accordingly, plaintiff's car was travelling down hill at all times after the lights of Talbot's car were visible to him. There is nothing in the evidence to indicate that plaintiff, prior to the accident, was driving his car in an unlawful or negligent manner. It is conceded that he was not familiar with the road over which he was travelling and that defendant Talbot was very familiar with it having driven over it many times. Plaintiff stated, as did other passengers in his car, that in going from Sidney, Nebraska, to Sterling, Colorado, he drove "between forty and fifty miles an hour," and that just prior to the collision he was driving "around forty miles an hour."

In describing the accident plaintiff said: "A. Well, I came to the top of this hill, dimmed my lights, and I noticed a car angling over to my side of the road. So the first thing I did was—I didn't know for sure but what it was a curve in the road there. I thought, my first thought, was that that is what it was there, that it was a slight curve in the road and that he was on his side, and I was going to stay on my side, so I pulled over to my right and got off on the shoulder. And I knew I was on the shoulder when I got over so far the wheels were in the soft sand right next to the barrow pit.

\* \* \*

"A. The lights were on bright, and immediately after I came over the hill they blinded me and I couldn't see where I was, or couldn't tell where he was, because of his lights directly in my eyes.

\* \* \*

"A. There wasn't much I could do. After my right-

hand wheels got off in the soft sand and shoulder, I was afraid if I turned to the left the wheels would grab in the sand and turn the car over; or, if I slammed on my brakes hard, it would more than likely roll me in the ditch. I was scared of rolling the car more than anything. I was sure the car would surely get on its own side of the road before I got to it. Q. You assumed he'd get on his right side before you got to it? A. Yes. * * * A. Well, after I was out on the soft sand, drove there a little ways, and the next thing I noticed was a mailbox directly in front of me, and I hit that and then hit the car. Q. What was your intention at that time? Did you have any intentions to do anything? A. Nothing I could do with the lights blinding me the way they was. All I could do was hang on and hope. * * * Q. And you testified that these lights from this other car were blinding you, is that right? A. After he got straightened out and headed toward me—he angled when I first saw him. He was angling toward my side of the road, and just a few seconds later he was headed directly toward me and the lights were blinding me."

Highway patrolman Asher arrived at the scene of the accident about midnight, after all passengers in the cars had been taken from the scene. Plaintiff's car was in the west barrow pit and the truck belonging to McKenzie was on its left side with the rear end four feet on the oiled pavement. Tire marks made by plaintiff's car were visible for a distance of 168 feet from the point of impact and were located on the west graveled shoulder; they angled to the right toward the west barrow pit. Asher could not determine whether the marks were caused by application of the brakes. In this connection he stated: "A. Well, there was a light scuff there—well, just like you'd first start applying the brakes. Q. Now, for how long a distance did you find that? A. There was a light scuff for one hundred sixty-eight feet. Whether it was a brake or a side-slue, I was unable to determine."

At the conclusion of the evidence plaintiff moved for

directed verdicts, his motion being in substance as follows: For a directed verdict in favor of Ankeny and against Talbot on Ankeny's complaint, reserving the right to let the jury assess Ankeny's damages; for a directed verdict in favor of the plaintiff Ankeny and against Talbot on the counterclaim of Talbot; for a directed verdict in favor of the plaintiff and against McKenzie on the counterclaim of McKenzie; and for a directed verdict in favor of the plaintiff and against the defendant McKenzie on the plaintiff's complaint, reserving the right of the plaintiff to go to the jury on the question of plaintiff's damages. This motion was overruled by the court. The theory of the trial court in submitting the case to the jury was that an issue was raised under the doctrine of last clear chance, and instructions were given covering that doctrine,

The specification of points contains twenty-eight alleged errors. We do not find it necessary, however, to consider all of them. Among the points urged for reversal are the following: That Talbot was negligent as a matter of law, and that his negligence was the proximate cause of the accident; that plaintiff, as a matter of law, was not guilty of any negligence which was, or could have been, the proximate cause of the accident; that the doctrine of last clear chance was not applicable for the reason that there was no evidence tending to prove that plaintiff had a last clear chance to avoid the collision; and that the trial court erred in refusing to direct a verdict in favor of plaintiff against each of the defendants, and to limit the issues to be determined by the jury to assessing the damages which plaintiff had sustained.

## Questions to be Determined.

First: *Considering the evidence in the light most favorable to defendant Talbot, was negligence on his part established as a matter of law?*

This question is answered in the affirmative. He admittedly drove on the wrong side of the road, at night,

up a hill, the crest of which was but 450 feet from the point of impact and 435 feet from the mailbox, which he intended to reach. This distance would be covered by an automobile travelling at a lawful speed of fifty to sixty miles an hour in five or six seconds. A presumption of negligence arises against the driver of a motor vehicle who is on the wrong side of the road at the time of a collision. *Larson v. Long,* 74 Colo. 152, 219 Pac. 1066; *Dottavio v. Lohr,* 122 Colo. 294, 222 P. (2d) 428. The car driven by Talbot was being operated in violation of section 194, chapter 16, '35 C.S.A., which requires a vehicle to be driven on the right half of the roadway except in instances not pertinent to the facts in the present case. It is not seriously contended that Talbot was free of negligence. It is disclosed in the record that he entered a plea of guilty to a charge of careless driving, in an action prosecuted by the people growing out of the accident involved herein. It is equally clear that the collision and resultant damages were proximately caused by Talbot's negligence.

■ Violation of a statute or ordinance regulating the use of highways is negligence, as a matter of law, and if it is the proximate cause of an accident such negligent person cannot recover damages unless the doctrine of last clear chance is applicable. *Brickey v. Herring,* 96 Colo. 181, 41 P. (2d) 298; *Fabling v. Jones,* 108 Colo. 144, 114 P. (2d) 1100; *Aaron v. Wesebaum,* 114 Colo. 61, 162 P. (2d) 232.

■ Second: *On the issues framed by the counterclaims filed by defendants, and plaintiff's answer thereto, was there any evidence warranting the submission of the case to the jury upon the theory that the doctrine of last clear chance was applicable?*

This question is answered in the negative. We reach this conclusion for two reasons, either of which is sufficient in itself to demonstrate that plaintiff Ankeny (who in effect is the defendant in so far as the counterclaims are concerned) cannot be held liable under the doctrine

of last clear chance. Talbot, under the undisputed evidence, negligently placed himself in a perilous position. This must have been apparent to him as he was angling across to the left side of the road, because he testified that he was 600 feet distant from plaintiff's car when he first saw it. Ordinary care unquestionably would require that he return to the right side of the road and thus extricate himself from the position of peril in which he had placed himself. His car was then in motion and travelling at a speed of approximately ten to fifteen miles an hour; thus he had at the most a distance of twenty feet to travel back to the right side of the road during that period of time in which the approaching car must have travelled 600 feet. One of the essential conditions to application of the doctrine of last clear chance is that, the person relying on the doctrine is unable to extricate himself from a position of peril. This essential was considered in the case of *Independent Lumber Co. v. Leatherwood,* 102 Colo. 460, 79 P. (2d) 1052, wherein we stated: "The plaintiff's peril came into existence at the moment his car passed a point beyond which he was unable to change his course or speed to prevent a collision. When plaintiff passed that point he had taken the right of way; *he had created a dangerous situation from which he could not extricate himself;* and he had to remain in danger until his car covered the space within which he could not change his course or speed to avoid the collision plus the width of defendant's truck, some six feet, plus the length of plaintiff's car, fourteen feet six inches, according to the evidence. During the time he was traveling such distance nothing plaintiff could do, whether conscious or unconscious of his situation would prevent a collision." (Emphasis supplied.)

We said in *Lambrecht v. Archibald,* 119 Colo. 356, 203 P. (2d) 897: "A negligent plaintiff who has placed himself in a perilous position *from which he cannot extricate himself in time to avoid an accident,* may recover from a negligent defendant who is aware of

plaintiff's perilous position or who, by the exercise of reasonable care, caution and vigilance, might have become aware of it, and thereafter, by the exercise of reasonable care and caution, could have averted the accident, but failed to do so." (Emphasis supplied.)

In the case at bar, after Talbot placed himself in a position of peril he had ample opportunity to extricate himself therefrom in the exercise of reasonable care.

In addition to the foregoing, there is no evidence in the case tending to prove negligence on the part of Ankeny. It is undisputed in the evidence that when he realized, not more than three or four seconds before the crash, that Talbot was on the wrong side of the road, the lights from the truck—whether dim or bright—were in his eyes and he could not see beyond them. When Talbot stopped his angling and was over on the left side of the road he straightened up his car to go due north, thus giving the appearance that he might be attempting to go back to the right side. As a matter of law, we believe that Ankeny's conduct under all these circumstances was that which would be expected of a reasonably prudent person. In determining, as a matter of law, that he thus acted, we bear in mind the fundamental rule that a person driving a motor vehicle on a highway has the right to rely upon observance of the law by other persons driving motor vehicles thereon, and that one cannot be charged with negligence in failing to anticipate that other drivers may violate the laws governing the use of highways. *Prentiss v. Johnston,* 119 Colo. 370, 203 P. (2d) 733. We further consider the additional rule that, where the driver of an automobile suddenly realizes that he is placed in danger from the negligence of another, he cannot be charged with negligence for an error of judgment when instantaneous action is required. *Lebsack v. Moore,* 65 Colo. 315, 177 Pac. 137; *Leonard v. Bauer,* 112 Colo. 247, 149 P. (2d) 376.

In *Dwinelle v. Union Pacific Railroad Co.,* 104 Colo. 545, 92 P. (2d) 741, we used language which we think

applicable to the facts of the case at bar. We there said: "The most that can be said here on the point is that the evidence discloses a mere possibility that Finn might have avoided the collision, and that possibility rests upon split seconds. This is not enough to meet the rule. It may present a last, but not a clear, chance." It follows, therefore, that the trial court erred in denying the motion made by counsel for plaintiff wherein he requested the court to direct a verdict in favor of plaintiff and against the defendants upon each of the counterclaims asserted by them. Error also was committed by the trial court in denying the motion of counsel for plaintiff for a directed verdict in favor of plaintiff and against defendant Talbot upon the issue of liability. As between plaintiff and Talbot the only issue to be determined by the jury was the amount of damages to be awarded plaintiff.

■ Third: *Did the trial court err in refusing to direct a verdict in favor of plaintiff and against defendant McKenzie?*

This question is answered in the negative. The only basis for liability to the plaintiff on the part of McKenzie, for the negligence of Talbot, is the claim by plaintiff's attorney that Talbot was a servant of McKenzie and was driving the truck in the scope of his employment at the time of the accident. Suffice it to say that we have carefully examined all the evidence upon which plaintiff relies to sustain this theory, and have no hesitancy in saying that there is no competent evidence in the record before us which tends to prove that Talbot was driving the truck involved in the accident in the scope of his employment by McKenzie. It affirmatively appears from the evidence that at the time of the accident Talbot was engaged in driving on a mission of his own, not connected in any way with his employment by McKenzie. If a verdict had been returned against McKenzie and judgment had been entered thereon, it could

324

not be permitted to stand for the reason that it would be without support in the evidence.

The judgment is reversed and the cause remanded with directions to dismiss the counterclaims of Talbot and McKenzie, and for further proceedings consistent with the views herein expressed.

MR. CHIEF JUSTICE JACKSON, MR. JUSTICE STONE and MR. JUSTICE CLARK dissent.