GLOBE CEREAL MILLS, Appellant,

v.

Shirlee S. SCRIVENER, Appellee.

No. 5420.

United States Court of Appeals
Tenth Circuit.

Dec. 18, 1956.

Lowell White, Denver, Colo. (Walter A. Steele, Denver, Colo., was with him on the brief), for appellant.

Fred M. Winner, Denver, Colo. (Max D. Melville, Denver, Colo., Dan Milenski and Marvin G. Ping, Cortez, Colo., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff brought this action to recover judgments for the death of her husband and personal injuries growing out of an automobile-truck accident in southwestern Colorado. Judgment was in favor of the plaintiff on both claims. The principal grounds for reversal are that there was insufficient evidence to show negligence in the operation of defendant's truck and that the driver of the car in which the plaintiff was riding was guilty of contributory negligence as a matter of law.[1]

The accident occurred on a hard-surfaced highway on a clear day, shortly before 11:00 o'clock in the forenoon. The highway runs generally in a south-

---

1. A pre-trial order stated the contentions and theories of the parties as follows: "Plaintiff contends that defendant's truck was negligently driven and turned in such a manner as to completely block the highway on the crest of a grade, that said truck was negligently turned into the path of the car in which plaintiff was riding and that the driver of said truck violated the motor vehicle laws of the State of Colorado in so doing. Defendant contends that the deceased, Kenneth G. Scrivener, was driving at an excessive and illegal speed over the crest of a hill, that there was no negligence on the part of the defendant or defendant's driver, Homer H. Smith, and that the accident was caused by the sole negligence or contributory negligence of the deceased, Kenneth G. Scrivener."*

east-northwest direction, and for convenience we shall refer to it as east-west. Immediately prior to the accident, plaintiff and her husband were traveling in an easterly direction in a Hudson automobile, and were approaching the crest of a hill which obscured a view of the highway beyond the crest in both directions. Near the top of the hill, on the south side, were substantial improvements, including grain elevators and warehouses.

Defendant's vehicle, which was a tractor-trailer combination outfit, fully loaded with grain, with an overall length of sixty feet and a total weight of 74,000 pounds, was proceeding in a westerly direction on the right side of the highway, and, when within approximately one hundred feet of the crest of the hill, made a left turn to enter upon the premises south of the highway. The driver of the truck testified that in making the left turn, the tractor portion of the truck proceeded at an angle across the east bound lane of traffic. That prior to making the turn he did not observe an approaching automobile from the west. That he was in low gear and was driving from three to four miles per hour when he started to make the left turn. That when he was about four or four and one-half feet into the east bound lane of traffic he still saw no vehicle approaching from the west and was about to continue to cross the highway when he observed a car approaching from the west, about one hundred feet away. At that time he applied his brakes in order to stop, leaving the remainder of the road for the oncoming car. He said that in his opinion the impact between the cars took place at about the center of the left lane of traffic "a little more or a little less". He observed the oncoming car "trying to cut to the right but not having much luck at it". He stated that the left front bumper of the Hudson car struck the left front bumper of the truck twelve or fourteen inches from its end. The impact ripped the left front tire of the truck and the axle was badly bent backward. The front end of the truck was moved some distance to the left by the

impact, but not the trailer. The left side of the Hudson car was demolished. It came to a stop about seventy-five feet beyond the point of impact. The marks on the highway indicated that the point of impact may have been about two feet from the south edge of the pavement. The evidence varied to some extent as to the distance which the force of the impact moved the front end of the tractor laterally. One witness said the skid marks showed a lateral movement of about one foot and the vehicle moved ahead about eight feet after the impact, and that he did not observe any brake marks left by the trailer. The driver of the truck and a highway patrolman estimated that the front end of the tractor was pushed to the left about eight feet, but the tractor was moved very little by the impact. The import of the driver's testimony is that he was at a stop at the time of the collision. A photograph indicates that the rear wheels of the tractor, which was twenty feet in length, were at or beyond the center of the east bound lane of traffic and not far from the point of impact. The front end of the trailer was well across the left side of the highway after the collision. The tracks of the Hudson automobile showed that it began to swerve to the right when about eighty feet away from the turning tractor, and barely missed avoiding it entirely. The evidence varies as to the distance that the drivers of the two vehicles could have seen each other. It is clear that either driver could have seen the other vehicle, or a portion of it, a considerable distance away.

Where fair minded persons may form different opinions and draw different conclusions or inferences from facts, the question of negligence, contributory negligence and proximate cause is for the jury. Every inference fairly deducible from the evidence is to be drawn in favor of the judgment. Yockey Trucking Co. v. Handy, 128 Colo. 404, 262 P.2d 930; Scott v. Matsuda, 127 Colo. 267, 255 P.2d 403; Book v. Paddock, 129 Colo. 84, 267 P.2d 247. We think the evidence is ample to sus-

tain the finding of negligence on the part of defendant's driver. The road was well known to him; he knew that the hill obscured his view to the west and that he was not able to see oncoming traffic until a short time before it reached the crest of the hill. If he was traveling at the rate of four miles per hour, he would cover approximately six feet per second. The east lane at this point was ten to twelve feet wide and the driver estimated that his truck was struck at about the center of this lane, which distance would be traveled in very little more than a second's time, even at an angle. If the jury believed, as it had a right to believe, that the Hudson car was traveling at a speed of fifty to fifty-five miles per hour, it was less than one hundred feet away and in full view when the truck entered its lane of traffic, and the physical evidence indicates it was about that distance away when it began to swerve to the right, although the truck driver testified that he first saw the oncoming car when it was about one hundred feet away. From all the evidence, including the location of the truck after the collision, and the driver's testimony, the jury might have concluded that the truck driver should have seen the oncoming car before making the left turn and that the truck was moving ahead at the time of the impact.[2] Vehicles being driven on an open highway may assume that those which they are about to meet and pass will remain on the right side of the road, as required by the Colorado Statute, C.R.S. 13–4–38. The driver of the Hudson automobile was not required to reduce speed until it became plainly evident that the oncoming vehicle was going to turn to the left side of the road. When a driver leaves his lane of traffic and turns into the lane for oncoming traffic, he must exercise care to avoid colliding with other vehicles traveling where they had a right to travel. 5 Am. Jur., Automobiles, § 323; Bradley v. Schmidt, 223 Ky. 784, 4 S.W.2d 703, 57 A.L.R. 1100, Annotation, 1106.

The Supreme Court of Colorado has said that driving on the left side of the road is presumptive evidence of negligence. Ankeny v. Talbot, 126 Colo. 313, 250 P.2d 1019; Dottavio v. Lohr, 122 Colo. 294, 222 P.2d 428. Although the rule of these cases may not be applicable when a left turn is being made, they illustrate the extent to which the courts fix responsibility upon drivers entering the opposite lane of traffic. In Boyd v. Close, 82 Colo. 150, 257 P. 1079, 1080, it was said that "If cars approach each other on a straight track, each on the right-hand side of the road, and neither turns, no question of precedence can arise. But he who turns, thus transferring the other from his left to his right, must yield. Otherwise, no rule governs, and 'the race is to the swift and the battle to the strong.' * * * *"

The defendant urges that the testimony of the plaintiff shows that the driver of the Hudson car was guilty of contributory negligence. Her testi-

---

**2.** In describing his actions, the truck driver said: "I pulled out onto the highway and headed west up towards the elevator on top of the hill, and by the time I got almost to where I needed to turn left the car that I had seen way down the hill had caught up with me and the road was clear in front. I looked in my mirror to check with the traffic coming from behind. I knew there was one car there and there was another one when I looked in the mirror coming up and he pulled in behind the other car, leaving the road clear there. So I started my turn and got approximately 4 feet, 4 and a half, over the center of the road to the left, still nothing coming, and I was looking out into the gravel driveway where I was turning out and all at once this car came over the hill there and just—I didn't have time to get out of the way, as slow as I was going. The only thing to do was to stop, leave the remainder of the road for the car coming to meet me. And by the time—I figured just about by the time I hit my brake and the clutch was the time of the impact (snapping finger)."

He was also asked where on the highway the impact took place, and answered: "Well, I would say near the center of the left side of the road, possibly a little more or a little less, but my opinion would be about the center of the left lane."

mony was that her husband was driving at a speed of fifty to fifty-five miles per hour; that she was not giving particular attention to the road, and that when she first observed the truck she estimated that it was about one hundred feet away and appeared to be blocking the entire highway. She said that to the best of her recollection there was nothing that would have prevented her husband from seeing the truck before she did. Plaintiff was very severely injured by the collision and unconscious for a considerable length of time thereafter. She said her recollection stopped with the first sight of the truck. We find nothing in her testimony that would establish contributory negligence as a matter of law, nor is there any merit in the contention that the undisputed physical evidence conclusively establishes that the Hudson car was being driven at a high, reckless and unlawful rate of speed which was the proximate cause of the collision. There is evidence that the Hudson was being driven at a greater rate of speed than that testified to by the plaintiff. Whether the Hudson was being driven at a negligent rate of speed was a question for the jury.

■ The defendant also urges that, assuming that the speed of the Hudson was fifty to fifty-five miles per hour, the driver, under those circumstances, had he been watching and observing the road as he is required to do, could have seen the truck in ample time to stop or turn off the highway and avoid the collision. Assuming this to be true, the driver of the truck could also see the oncoming car before he made the left turn. Under the circumstances, the question of contributory negligence was properly presented to the jury. We may not overlook the fact that when vehicles are meeting and passing on open highways, we are dealing with high speeds, short distances, and split seconds of time. A vehicle turning to the left on a highway has very few feet to travel and, even at slow speed, is into the opposite lane of traffic in a fraction of a second. There are so many factors that may enter into the problem that it is impossible to make accurate mathe-

matical calculations as to time or distance. Such calculations, at best, are speculative and usually present questions for a jury to resolve. As a general proposition, whether negligence was the proximate cause of an accident, or was caused by the concurrent negligence of both parties, is for the jury. Amos v. Remington Arms Co., 117 Colo. 399, 188 P.2d 896.

At a point three to four hundred feet west of the crest of the hill, the Colorado Highway Department had erected a highway sign which read: "Trucks entering the highway." This sign was on the right side of the road and obviously was for the purpose of warning east bound traffic that trucks, at some distance ahead, might be entering upon the highway from the south side. It would give no warning that a vehicle which east bound traffic was meeting would make a left turn, and has no part in this case.

■ Colorado Rev.Stat.1953, Chapter 13-4-42, provides in part:

"(2) No vehicle, in overtaking and passing another vehicle or at any other time, shall be driven to the left side of the roadway under the following conditions:

"(a) When approaching the crest of a grade or on a curve in the highway when the driver's view along the highway is obstructed within a distance of 750 feet."

This statute was included in the Court's instructions, with the statement that the jury was not at liberty to consider traffic regulations as negligence unless it was believed from a preponderance of the evidence that the violation was the proximate cause of the accident or materially contributed as a proximate cause of the accident. Objection was made to the instruction on the ground that there was no evidence that the statute was applicable. The Colorado Courts have not construed this section. It is quite plain, however, that its purpose is to restrict traffic to its proper lane if the view ahead is obstructed by a grade or curve. It requires traffic to stay in its lane if the

view is obstructed by a grade or a curve for a distance of 750 feet. Had the truck turned to the left side of the highway to pass a vehicle which it had overtaken, there could have been no doubt as to the applicability of the statute. Under the conditions named in the statute, the prohibition is not limited to turning to the left of the center of the road when overtaking and passing another vehicle, but also prevents such movement at "any other time". It may be that the Colorado Legislature intended that this provision was to apply only to vehicles which might turn to the left of the center of the highway for any reason and continue up the grade, and was not intended to cover left turns. The plain words of the statute, however, include a left turn, but we do not believe that it is necessary to construe the meaning of the statute as the instruction was not prejudicial to the defendant. The Court did not instruct that a violation of the statute was negligence per se. The effect of the instruction that a turn, in violation of the statute, was not actionable unless it was the proximate cause of the injury, is the law of the road under the facts of this case.

▆▆▆▆▆ Finally, it is contended that the court erred in refusing to admit in evidence certain exhibits and in refusing to permit a witness to testify, which exhibits and witness were not referred to and included in a pre-trial order. Rule 16, Fed.Rules Civ.Proc., 28 U.S.C.A. provides a pre-trial procedure designed to expedite and simplify the trial of cases. It contemplates an order which will recite the action taken at the pre-trial conference. Without objection, the order in this case listed the witnesses and the exhibits which each party expected to use at the trial. The order made provision for additional witnesses and exhibits by either party, upon notice. The defendant sought to introduce certain exhibits and use the testimony of a witness, neither of which was named in the pre-trial order. The rule provides that "such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." [3] No amendment to the order was sought, and no showing other than a statement made by counsel that he thought the witness had been named by the plaintiff, was made why the order was not complied with by giving notice of a desire to use additional exhibits and witness. The matter was within the discretion of the trial court and the record discloses no abuse of that discretion or manifest injustice.

Judgment affirmed.

3. In Berger v. Brannan, 10 Cir., 172 F.2d 241, 243, certiorari denied 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746, this Court said: "The spirit of a pre-trial procedure is not only to call the parties together and ask them to stipulate as to all matters concerning which there can be no dispute, but to compel them to stipulate and agree as to all facts concerning which there can be no real issue. The court has a right to compel the parties to do this. This is the philosophy of the McDonald case. Unless the court has such power, a pre-trial conference is indeed innocuous and of little help. Without Rule 16, the court always has had the power to ask the parties to meet and request them to try and get together on all such matters. The purpose of the pre-trial procedure is to compel them to do this." (Footnote omitted.) See also Fernandez v. United Fruit Co., 2 Cir., 200 F.2d 414, certiorari denied 345 U.S. 935, 73 S.Ct. 797, 97 L.Ed. 1363; Matheny v. Porter, 10 Cir., 158 F.2d 478; McDonald v. Bowles, 9 Cir., 152 F.2d 741.