## No. 17,088.

PLATTE VALLEY MOTOR COMPANY, INC. *v.* WAGNER ET AL.

(278 P. [2d] 870)

Decided August 3, 1954. Rehearing denied January 31, 1955.

Mr. WILLIAM W. GAUNT, Mr. CHARLES T. BYRNE, for plaintiff in error.

Mr. DAVID J. MILLER, Mr. MELVIN DINNER, Mr. RICHARD McKINLEY, for defendants in error Wagner.

Messrs. DENIUS & DENIUS, Mr. ROBERT G. SMITH, for defendant in error Olson Manufacturing Company.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

SEPTEMBER 3, 1948, the Wagners, defendants in error, filed a complaint in damages against Platte Valley Motor Company, Inc., plaintiff in error, and the Olson Manufacturing Company, an Idaho corporation.

It was alleged that on or about October 4, 1947, the Wagners purchased from the Olson Manufacturing Company, by and through its agent Platte Valley Motor Company, or from Platte Valley Motor Company acting in its own behalf, one Kiest beet topper and one Kiest lifter-loader, and paid the Platte Valley Motor Company, as agent for defendant the Olson Manufacturing Company, or on its own behalf, the sum of $3,235.00; that on receipt and delivery of the beet machines, repeated attempts were made to harvest sugar beets; that the machines failed to harvest the beets in an efficient or reasonable manner; that the Wagners then first learned that the machines, by design and operation, were not adaptable or reasonably suited for the purpose for which they were designed and shown, that is, for the topping, digging and loading of sugar beets; that for said purposes, said machines were wholly inadequate and valueless; that they notified defendant that the machines were of unmerchantable quality and wholly unsuited to perform the functions for which they were sold; and due to the

failure of the machines to perform the functions for which they were sold and bought, the Wagners were damaged in the sum of $3,185.50. The Wagners remitted all claims for damages in excess of the sum of $2,999.00; they further alleged that they were in doubt as to whether Platte Valley Motor Company was acting for and on behalf of the Olson Manufacturing Company as its agent, or on its own behalf. Both defendants answered. The Platte Valley Company alleging that it was an agent of Olson, and denying making any representations on its own behalf; stated that any of its acts and representations were made with full knowledge, authorization and consent of the Olson Manufacturing Company; and that all of its acts were within the scope and authority of its agency and were done for and on behalf of said company.

The Olson Company answered, denying that the Wagners, as plaintiffs, made any purchase from it; denying that Platte Valley Company was its agent; denying that the Wagners made any payment to it; further denied that the Wagners relied on any representation of newness; and pleaded the statute of limitations as a bar to the amended and second further cause of action filed by the Wagners on leave of court. The original complaint filed on September 3, 1948, sounded in damages for breach of warranty, and the final amended complaint alleged misrepresentation and fraud and was filed more than three years before January 14, 1952, when they first sought leave to amend.

For brevity, at this point it is well to note that the trial court dismissed the alleged cause of action of misrepresentation and fraud under this amended complaint on the ground that it was barred by the three-year statute of limitation. We believe, and so hold, that the court was in error in so ruling for the reason that it was not a new cause of action, but an amendment to the original complaint under the same facts; related back to the original

complaint; and therefore was not barred by the three-year statute of limitations.

The amended and further cause of action was answered by Platte Valley with a general denial and a plea of the statute of limitations, and it filed a cross-claim against its co-defendant, the Olson Manufacturing Company for payment of services rendered Olson in the sum of $2,455.35 and $10,000.00 damages sounding in fraud and misrepresentation reasonably relied upon by Platte Valley and resulting in damages in that amount. The trial court, over the objection of defendant Platte Valley, ordered a separate trial of the cross-claim against the Olson Manufacturing Company. The Wagners, plaintiffs, petitioned the court for leave to amend their complaint by withdrawing their remittitur, which would allow them to claim all damages. This petition was denied. Under rule 15 (a), R.C.P. Colo., leave to amend should be freely granted and the rule further emphasizes liberality in the application of the rule. Many federal cases and those of other jurisdictions permit the increasing of the amount sought in damages against a non-resident corporation, and our attention is not called to any case, either in the federal or the state courts, denying such petition, therefore we find that error was here committed.

Nearly five years had elapsed from the time of the filing of the original complaint until the day of trial to a jury, which returned its verdict January 30, 1953 in favor of the Wagners, plaintiffs, in the sum of $2,999.00 against Platte Valley Motor Company, on which judgment was entered. The cause of action against The Olson Manufacturing Company was dismissed by the trial court, and this order of dismissal is one of the specified errors now before us, which action of the trial court is supported by a brief filed herein by the Olson Manufacturing Company.

To summarize the facts is difficult; but to detail every incident, and to relate the evidence and discuss the various exhibits, would unduly lengthen this opinion. At the

start, it is well to say that the Wagners paid good money for the two so-called beet-harvesting units, which did not do the work for which they were sold, and this is not denied. They did buy the particular units involved with the knowledge that they were not new units, but ones which had been in the course of repairs and replacements by the Olson company; nevertheless, representations had been made to the effect that the units were suitable for the purpose for which they were purchased, and whether such representations are chargeable to Olson or Platte Valley or both, is the ultimate problem before us.

As between Platte Valley and Olson, it is a case of the kettle calling the pot black, and incidentally, the Wagners agree with both of them.

The controlling facts are that the Wagners were on the hunt for beet labor and meeting with disappointment, they became interested in the purchase of beet harvesters and went to the Platte Valley Motor Company, as known distributors of such machines. The Olson Manufacturing Company manufactured harvesters for the Kiest Beet Harvester Company, but Olson retained ownership. Olson shipped such harvesters to Platte Valley Motor Company at Brighton on consignment for sale at the specified price of $3,000.00, and on a sale, Platte Valley was to remit $2,400.00 to Olson, and if ten or more machines were sold by Platte Valley, it was to be allowed an additional $100.00 per machine. Any machines not sold were to be returned to Olson. It was on October 2, 1947, that the Wagners made inquiry of Platte Valley, which in turn called Olson at Boise, Idaho, to see if Olson had another harvester. Olson replied that it had one and the Wagners made the purchase and paid their money to Platte Valley, which gave them a pickup order for the harvester at Boise. On leaving the Platte Valley establishment the Wagners tried to ascertain as to whether or not they could get a truck to go to Boise for the machine on the pickup order. According to the Wag-

ners' testimony, Cherry, president of Platte Valley, telephoned them that day that the harvester was arriving and there would be no need for them to go to Boise. They went to Platte Valley Motor Company on October 4 to receive the machine, which they saw unloaded from a truck that day. Cherry and another witness testified that the machine the Wagners received had been at Platte Valley's place of business since September 12, 1947, and further stated that there was a machine being unloaded October 4, 1947 which went to one Loos. It seems to be undisputed that the two-unit beet harvester which the Wagners received was shipped by the Kiest Beet Harvester Company to L. E. Wind at Hillrose, Colorado in 1946, which arrived too late for the beet harvest and was offered to Platte Valley by Wind in 1947. Wind had paid $400.00 on the order and when he offered the machine to Platte Valley, it called Olson and was told that Platte Valley could sell the harvester and handle it the same as other harvesters and was directed to pay Wind $400.00 and remit $2,000.00 to Olson. Cherry, of Platte Valley, then testified that Olson owned the harvester which Wind had delivered to Platte Valley and this is supported by a letter dated February 3, 1947, written by Olson Manufacturing Company and addressed to L. E. Wind at Hillrose, Colorado, which is as follows:

"Dear Sir:

"The undersigned hereby offers to repair, alter and/or make substitutions in and to the beet harvester machine purchased by you from Kiest Beet Harvester Company to the end that it will function efficiently on your farms and at the beginning of the beet harvesting season of 1947 to demonstrate to you that it will so function, at no cost or expense to you. If and when you are convinced that said machine, as repaired and/or altered by the undersigned, will so perform, and have accepted the same, the undersigned will furnish you a complete operating manual and parts list for said machine free of charge, and execute and deliver to you a warranty in

the enclosed form, and will keep on hand and make available to you a full and complete stock of new parts for said machine.

"The undersigned also offers to cause the rate of interest specified in your contract to be reduced from 7% to 5%.

"The conditions of this offer are that you will keep and perform the conditions of said warranty and pay the remainder of the purchase price of said machine, which, it is agreed, amounts at the present time to the sum of $2000.00, besides interest.

"Past due installments on
purchase price extended
to Dec. 20, 1947"

The Wagners had no knowledge as to whether the harvesting units they had purchased would do the work they were represented to do, because they never saw the equipment in operation; their only inspection was when the equipment was being adjusted; and their sole reason for purchasing this equipment rested upon the statements of Platte Valley and Olson. The Wagners tried to use the equipment for harvesting twelve acres of beets in three weeks, and notified Platte Valley it did not do the work; they abandoned the use of the equipment and had their beets harvested otherwise by paying $1,118.25 to a harvester with another make of equipment; that they paid $1,393.14 for hand labor besides suffering a loss of tonnage on the beets and sugar content in the sum of $120.00; and spent $200.00 for repairs; however, they confined the original claim for the purchase price of the machine, alleging that the machine had no more than junk value of $50.00, and they remitted the amount of their claim which was more than the purchase price down to $2,999.00.

Olson and Platte Valley made attempts to have the equipment work, but failed in their efforts. From here on, we simplify disposition of this case by confining ourselves to the fundamental question, which is: What did

the buyer order, and what did the sellers undertake to deliver? It seemed to be the trial court's position that Wind acquired title to the harvester; that Olson merely held a security interest; and because Wind sold it to Platte Valley, there was no liability against Olson by the Wagners. However, the Wagners contend that sufficient facts were proven at the trial that would show that Olson was the seller; that it was the manufacturer; and that it made an actionable misrepresentation to the Wagners, both directly and through its agent, Platte Valley.

Although much of the brief of plaintiff in error is confined to the question of the giving of erroneous instructions and the refusal to give tendered instructions, since we find no reversible error in connection therewith we forego any discussion thereof. While the Wagners agree with the position of Platte Valley that the trial court committed error in dismissing Olson from the case, it, however, properly contends that Platte Valley cannot rely on this dismissal for a reversal of the judgment against it, since there was sufficient evidence to support the judgment entered on the verdict against Platte Valley as the seller. The record discloses that prior to receiving the "Wind machine," knowing it to be a used machine, the Wagners requested their money back from Platte Valley and were informed that they could not have it returned, because it already had been mailed to Olson. At that moment, Platte Valley agreed to exchange the top pickup assembly of the topper equipment and the Wagners agreed to accept the machine. This acceptance and retaining of the equipment by the Wagners does not defeat an action for damages for breach of warranty according to section 69 (b) chapter 143 A, '53 Cum. Supp. '35 C.S.A.

The troublesome question here presented relates to a warranty, express or implied, made by either or both defendants, Platte Valley and Olson, as to the particular equipment involved. It is undisputed that Olson was the manufacturer of the equipment, retained ownership, and

directed Platte Valley to handle this equipment then in the hands of Wind, the same as other transactions concerning beet-harvesting equipment sold by Platte Valley. Olson had, by the letter to Wind, herein set out, offered to do whatever was necessary to make the equipment function efficiently on Wind's farms. It cannot be denied that Olson had placed this, and like equipment, on the market for sale and as being suitable for beet harvesting. It is contended that there is no privity of contract between Olson and the Wagners as ultimate purchasers. That seems to be the general rule; however, there are many exceptions, and in this case, under the law of torts, it is recognized to be the duty of a manufacturer to make carefully that which, if defectively constructed or assembled, results in loss or damage to whoever may be a purchaser. It cannot be denied that the Wagners were purchasing beet harvesting equipment known by them to be manufactured by Olson and distributed in the area by Platte Valley. They did not know, and were not called upon to know, the general relationship between Olson and Platte Valley, or the particular relationship as to the equipment involved. They bought the equipment for the particular purpose made known to the seller. If by its name or representation it was beet harvesting equipment, that was what they were looking for and purchased with a right to rely, and relying upon, the skill and judgment of the manufacturer and seller. In this instance the Wagners expressly made known the particular purpose for which the equipment was required, and under all the circumstances here, there was an implied warranty that the goods were reasonably fit for the purpose for which they were purchased. Section 15 (1) chapter 143 A, '52 Cum. Supp. '35 C.S.A. This was not a sale and purchase by description, or by sample, or according to a patent or trade name.

The question of representation, and also that of a warranty, was determined by the jury under fair and reasonable instructions against Platte Valley. The jury

was deprived of its consideration of the question of liability of Olson, since Olson had been dismissed from the case at the close of plaintiffs' testimony. Every fact disclosed by the record here points to a warranty, because the sale was of a known, described and definite article, designed and on the market for a particular purpose which carried with it a warranty of fitness for the purpose for which it was sold. The fact that the equipment here may be termed "used" equipment does not take this transaction from under the terms of the Uniform Sales Act. *Wallower v. Elder,* 126 Colo. 109, 247 P. (2d) 682. Certain facts are clear, namely, that Platte Valley had acted as a dealer for Kiest Manufacturing Company on this same machine, and that Platte Valley was a dealer which handled goods of the description of the equipment here involved, and it was the outlet for the Olson Manufacturing Company on the particular name and style of equipment here involved, while Platte Valley attempts to avoid liability on the theory that the Wagners purchased by trade name, which is not supported by the testimony. In support of this theory, Platte Valley relies upon the case of *Elwood Edwards, Inc. v. Kinsey,* 123 Colo. 52, 225 P. (2d) 59, however, that was a case of rescission and not one of damages, as is here presented.

It is abundantly clear, and so admitted, that the Wagners bought equipment that did not do the work for which it was sold, and incurred damages as a result thereof; it is equally clear that Platte Valley contends it was an agent of the Olson Manufacturing Company, and that representations of the skill and judgment of the agent made for the principal was determined against Platte Valley by the jury, which had no opportunity to pass upon the liability of the other defendant, the Olson Manufacturing Company. Since this case presents so many different aspects, and the ultimate results are unfavorable to both the Wagners and the Platte Valley Motor Company, we believe, and so hold, that the law and the facts justify a reversal of the judgment and a

remanding of the cause for a new trial, with directions to permit plaintiffs to withdraw their remittitur as to damages and plead the full amount they assert as such damage; to vacate the order of dismissal as to the Olson Manufacturing Company; and proceed to trial in general harmony with the views herein expressed. The judgment accordingly is reversed and the cause remanded with directions.

MR. JUSTICE MOORE dissents.

MR. CHIEF JUSTICE STONE and MR. JUSTICE BRADFIELD did not participate in the consideration of this case.