Ben ZAVORKA, Plaintiff-Appellant,

v.

**UNION PACIFIC RAILROAD COMPANY, a Corporation, Defendant-Appellee.**

No. 82CA1505.

Colorado Court of Appeals, Div. I.

July 26, 1984.

Rehearing Denied Aug. 30, 1984.

Certiorari Denied Nov. 5, 1984.

Morrisard & Rossi, P.C., John H. Inderwish, Aurora, for plaintiff-appellant.

Gorsuch, Kirgis, Campbell, Walker & Grover, Steven P. Bailey, Jane D. Smith, Denver, for defendant-appellee.

STERNBERG, Judge.

The plaintiff, Ben Zavorka, a head brakeman for defendant, Union Pacific Railroad, suffered injuries when the train he was riding in collided with another train between Rawlins and Cheyenne, Wyoming. Zavorka sued the railroad for negligence under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. (1970). Following a jury trial, he was awarded $15,517.32, which was reduced by the percentage of negligence attributed to him. Contending that the amount of the judgment would have been greater had it not been for certain erroneous rulings of the trial court,

Zavorka appeals. We reverse and remand for a new trial.

Zavorka sustained his injuries in an accident which occurred on October 27, 1977. On the morning of the accident, Zavorka's train was traveling east toward Cheyenne. The train stopped near Granite to permit another train to pass it. Zavorka's train followed that train on the same track.

Shortly thereafter, the other train stopped to secure a door which had swung open on one of its cars. That train's engineer radioed the engineer of Zavorka's train and informed him that the train had stopped. Zavorka's train then passed the signal standard which controlled the section of track on which the train had stopped.

Shortly after passing this signal standard, the stopped train was sighted, and the brakes were applied on Zavorka's train, which was traveling at approximately 42 m.p.h. Speed was reduced to approximately 15 m.p.h. before Zavorka's train collided with the stopped train. Zavorka suffered injuries to his hips and lower back when he jumped from the train just before the collision.

I.

Zavorka first argues that the trial court erred in not giving his tendered instructions with regard to a violation of a federal regulation concerning train power brakes being evidence of negligence per se, and on the applicability of 45 U.S.C.A. § 53 (1970). We agree.

The investigation following the accident revealed that eight cars of Zavorka's train had excessive piston travel in their braking system, and that five cars had no braking power. A master car inspector who participated in the investigation testified that it was normal procedure to haul cars in such a condition, and that the brakes operated within normal limits.

The pertinent federal regulation, 49 C.F.R. § 232.1 (1983) provides:

"On or after September 1, 1910, on all railroads used in interstate commerce, whenever, as required by the Safety Appliance Act as amended March 2, 1903, any train is operated with power or train brakes, not less than 85 percent of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train, and all power-brake cars in every such train which are associated together with the 85 percent shall have their brakes so used and operated."

This regulation is designed to prevent what is referred to as "slack action," which happens when a train's brakes are applied causing an unbraked car, connected on the air brake line, to bump the car ahead and then to be pulled by its slack bar by the car behind. *United States v. Atchison, Topeka & Santa Fe Ry. Co.*, 205 F.Supp. 589 (S.D.Cal.1962).

█ Only when the uncontrolled cars are placed at the rear of all the power-brake cars is this dangerous condition eliminated. This regulation is violated whenever even one car connected on the air brake line does not have its air brakes operative. *United States v. Atchison, Topeka & Santa Fe Ry. Co., supra. See also, New York Central R.R. Co. v. U.S.*, 265 U.S. 41, 44 S.Ct. 436, 68 L.Ed. 892 (1924).

█ There is no question that the regulation in question was a safety measure adopted for the benefit of workers and passengers of trains. *See* 45 U.S.C.A. § 421 (1970); 45 U.S.C.A. § 431(a)(1) (1970). Zavorka was a worker riding on a train. Therefore, he came within the class of individuals which the regulation was designed to protect and the jury should have been instructed that violation of the regulation would constitute negligence per se.

█ In an action based on the FELA, contributory negligence does not bar an employee's recovery, but instead diminishes his damages on a comparative negligence basis. 45 U.S.C.A. § 53 (1970). Under the Federal Safety Appliance Act, if the violation of any statute enacted for the safety of employees by the employer is alleged, and the violation contributed to the

injury or death of the employee, then the employee's contributory negligence is not a factor to be considered. 45 U.S.C.A. § 53. *Feigl v. Terminal Railroad Ass'n of St. Louis*, 30 Ill.App.3d 55, 332 N.E.2d 416 (1975).

The railroad contends that Zavorka's injury was unrelated to the fact that five cars had no braking power. However, negligence per se only establishes a duty and a breach of that duty. The plaintiff must still prove proximate cause and damages. Hence, the railroad can argue upon retrial that Zavorka's injuries were unrelated to its violation of the statute and the jury should be instructed along these lines.

### II.

Among certain other issues raised which may be encountered on retrial is Zavorka's contention that the trial court erred in giving an "unavoidable accident instruction." We agree.

This instruction stated:

"The law recognizes what is known as an unavoidable accident. An accident may happen and a person may be injured without negligence on the part of any person. And if you believe that Plaintiff's injury was the result of a pure accident or misadventure and was under the circumstances unavoidable then the Defendant would not be liable therefor."

In *Lewis v. Buckskin Joe's, Inc.*, 156 Colo. 46, 396 P.2d 933 (1964), the court held "that to give such instruction or to recognize unavoidable accident in an action based on negligence, as an independent element, separate and apart from negligence and contributory negligence, is improper."

This negligence action was brought pursuant to 45 U.S.C.A. § 51, et seq., and thus Colorado law is not controlling. However, even in jurisdictions which take a less restrictive view about giving such an instruction, there must be evidence presented which supports the finding of unavoidable accident. *See generally* Annot., 65 A.L.R.2d 32 (1959). There was none here. The evidence presented supported the theory that either Zavorka or the railroad was negligent. Therefore, upon retrial, if there is no evidence presented that the accident was unavoidable, the instruction should not be given.

### III.

Zavorka next contends that the trial court erred in permitting the railroad to introduce evidence of his suspension from his railroad employment following his injury on October 28, 1977.

After the accident, the railroad conducted an investigation, following which it discharged Zavorka and the engineer of the train. Contending that he had been wrongfully discharged, Zavorka then filed a grievance under the Federal Railway Labor Act. The grievance was settled, and pursuant to the settlement, Zavorka agreed to drop his wrongful discharge claim, and the railroad agreed to reinstate him to his former position with full seniority rights.

The parties entered into the following stipulations regarding Zavorka's claim for loss of wages:

"A stipulation has been entered into between the parties, that had Mr. Zavorka worked for the Union Pacific Railroad Company from the date of the collision until November 8, 1977, he would have earned $762.59 gross wages, $571.83 net wages.

Had Mr. Zavorka worked for the Union Pacific Railroad between the date of the collision and March 3, 1978, he would have earned $8,735.11 in gross wages, $6,550.00 net wages.

Had Mr. Zavorka worked for the Union Pacific Railroad between the date of the collision and June 6, 1978, he would have earned $15,321.11 gross wages, $11,488.49 net wages."

Zavorka was released to return to work by his doctor on March 3, 1978, and actually returned to work on June 6, 1978.

While cross-examining Zavorka, the railroad's counsel asked him if he had been "dismissed" from his brakeman job in November 1977, and asked if the dismissal

was because of any physical condition. After Zavorka answered both questions, his counsel objected and requested that he be permitted to explain the circumstances surrounding the "dismissal" and that he had been reinstated without admission of any responsibility for the accident. The trial court did not permit this evidence.

Zavorka's alleged damages included lost income as a result of the railroad's negligence. He was dismissed by the railroad on November 9, 1977, not because of his physical condition, but as a result of its investigation of the accident. Since he dropped his grievance action for wrongful discharge, the railroad contends that Zavorka was not claiming damages for lost wages between November 9, 1977, and June 6, 1978, the date of his reinstatement with the railroad. We do not agree.

■ Although Zavorka relinquished his claim for damages for wrongful discharge, we conclude that he did not surrender his claim for lost wages from the date of the accident until March 3, 1978, the date he was released by his doctor to return to work. Zavorka argues that he was prejudiced when the railroad was permitted to refer to his "dismissal" without his being permitted to explain the circumstances surrounding his firing and subsequent reinstatement. This problem could have been avoided by a stipulation as to the date of Zavorka's medical release to return to work, and the amount of wages he would have earned up until that date. The stipulations read to the jury only tended to confuse the issue and introduce extraneous matters into the trial. Upon retrial, only a stipulation as to when Zavorka was medically released to return to work, and the amount of wages he would have earned until that date, should be given to the jury.

## IV.

Zavorka also argues that the trial court erred in giving an instruction that to "look but fail to see" constitutes negligence. We agree.

A basic issue in this case was the color of the signal which controlled train traffic at the time Zavorka's train passed it. Zavorka said it was yellow; the engineer "assumed" it was yellow, and the railroad maintained it was red. After the collision it was red.

The colors on the signal indicate whether movement is permitted past the signal standard. A yellow signal indicates that a train may proceed at 30 m.p.h., while being prepared to stop at the next signal. A red signal, in most instances, indicates that the train must stop.

The trial court, over Zavorka's objection, gave the following instruction:

"To look in such a manner as to fail to see what must have been plainly visible is to look without a reasonable degree of care and is of no more effect than not to have looked at all."

See Colo.J.I. 9:13 (2d ed. 1980).

Zavorka notes that there was no question that he looked at the signal; the issue was whether the signal was yellow or red. However, he contends that in giving this instruction the trial court in effect instructed the jury that the signal was red, and that he had failed to see it. We agree.

■ The giving of this instruction has been upheld only when the alleged negligence involved the failure to see something which was plainly visible, and the allegedly negligent actor claimed he did not see it. See, e.g., Clark v. Bunnell, 172 Colo. 32, 470 P.2d 42 (1970); Union Pacific R.R. Co. v. Cogburn, 136 Colo. 184, 315 P.2d 209 (1957); Fabling v. Jones, 108 Colo. 144, 114 P.2d 1100 (1941). Here, however, Zavorka testified that he did see the signal standard, and that it was yellow. Thus, this instruction was error.

## V.

Zavorka's last argument revolves around the trial court's refusal to permit him to amend his complaint to include a cause of action based upon a violation of the Federal Safety Appliance Act, 45 U.S.C.A. § 1, et seq. (1970), requiring him instead to proceed only on his original negligence claim.

C.R.C.P. 15(a) provides that with respect to amendments "leave shall be freely given when justice so requires it." See Platte

*Valley Motor Co. v. Wagner,* 130 Colo. 365, 278 P.2d 870 (1954). "[T]he purpose of justice is best served not by treating [original pleadings] as sacrosanct, but rather by permitting the parties to ensure that the issues, as ultimately framed, represent the parties' true positions." *Brown v. Schumann,* 40 Colo.App. 336, 575 P.2d 443 (1978).

Zavorka's amended complaint involved a claim which arose out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." C.R.C.P. 15(c). Hence, upon retrial of this case, he should be permitted to plead this claim.

The railroad contends that any alleged violation of the Federal Safety Appliance Act did not contribute to Zavorka's injuries. Again, this argument goes to the issue of proximate cause, and Zavorka will bear the burden of proving that the violation contributed in fact to his injuries. *Kernan v. American Dredging Company,* 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

The judgment is reversed and the cause is remanded for a new trial.

PIERCE and BABCOCK, JJ., concur.